*564
 
 Marshall, C. J.
 

 A joint judgment was entered in the trial court against the agricultural society and De Michele. The action being grounded upon tort, a joint judgment could only be entered if there was a joint liability. The judgment could only be entered against De Michele in Stark county if a judgment was properly entered against his codefendant, the agricultural society, jointly with him upon such joint liability. Both judgment debtors are plaintiffs in error in this error proceeding, and while this review affects the joint judgment against both plaintiffs in error, the logical course is to first ascertain whether the judgment against the agricultural society is valid.
 

 The Stark County Agricultural Society is not the owner of the lands upon which the explosive was found, the title thereto being in the county commissioners of Stark county. Section 9906, General Code, does, however, invest the control and management of the lands and improvements in the board of directors of the agricultural society “so long as they are occupied and used by it for holding agricultural fairs.” The same statute contemplates that the society may rent and lease the grounds and buildings thereon, and the Stark County Society did in fact lease the premises to the Veterans of Foreign Wars for the purposes of a patriotic celebration on July 2d, 3d, and 4th, and later leased the premises to a show company for the purposes of a carnival for the period of a week commencing July 30, 1928. While no written lease was given to the Veterans of Foreign Wars, there was an entry upon the minutes of the society showing appropriate action giving to the veterans the use of the fair grounds for
 
 *565
 
 three nights. The minutes contained the following stipulation: “The Veterans of Foreign Wars, shall and does assume all liability and responsibility for persons or property which may be injured or damaged by reason of said performances.” That stipulation would, of course, have no force or effect to relieve the agricultural society for liability for negligence if the enterprise of conducting a patriotic celebration was one in which the agricultural society and the Veterans of Foreign Wars were jointly interested, and that stipulation has only been quoted because it indicates in conjunction with the portions of the minutes of the same meeting that the enterprise was not a joint one, but that the contract was one of ordinary demise of premises for a definite period for a definite purpose and for a definite consideration. It should be added that the stipulation quoted is not the only matter in this record indicating that the agricultural society had no part in the expenses or the profits or losses of the celebration, and had no part in planning or conducting the celebration.
 

 This action is not grounded upon a claim of liability for any accident or injury occurring during the course of the celebration, or during the period of time covered by the celebration.
 

 A- written contract was entered into between De Michele and the Veterans of Foreign Wars, and that contract provides that De Michele agrees “to furnish a fireworks display on the evenings' of July 2d, 3d and 4th, 1928,” for which the veterans were to pay him as compensation a lump sum of $500. The veterans further agreed to furnish all lumber required for the display, and one laborer to assist in
 
 *566
 
 digging holes. Mr. Potthast, commander of the veterans, was called for cross-examination, before the veterans were voluntarily dismissed from the case, and he testified that the lumber was furnished, and one laborer was furnished to dig the holes, and that the veterans did nothing further towards furnishing the display or setting off the fireworks. De Michele testified in his own behalf, and testified that neither he nor any one connected with his company fired the explosives. The record does not therefore disclose who actually fired the explosives, but it does sufficiently appear that there was a joint enterprise between the Veterans of Foreign Wars and De Michele, and that the veterans did assist in some measure in preparing the facilities for firing the explosives. It is unimportant to determine whether or not there was a joint enterprise, and therefore a joint liability between the veterans and De Michele, because the veterans were voluntarily dismissed from the case, with prejudice, and are therefore definitely discharged from liability for the injury. The relations between the veterans and De Michele are only important to be shown because the -contract between the veterans and De Michele clearly, shows that there was no privity of contract between the agricultural society and De Michele.
 

 Assuming, therefore, without deciding, that De Michele was negligent, the agricultural society could not be held responsible for his negligence, in the absence of a joint enterprise between them and in the absence of a showing that they were pursuing a common intent. The agricultural society can therefore be held responsible only for its own negligence. “Negligence” is defined as the failure to exercise
 
 *567
 
 ordinary care, and to constitute negligence there must be the omission of some duty imposed by law; the duty may be imposed by a statute, or by the principles of the common law. Let us inquire what duties are imposed upon the agricultural society by statute. Agricultural societies are organized for the purpose of conducting agricultural exhibitions. They act by and through a board of directors of eight member's. The directors are required to be members of the society and must hold regular meetings. The board is circumscribed by certain limitations as to the kind and character of entertainment which will be permitted upon the grounds of the society. Nowhere in the statute is- found any definition or requirement as to the character of the control and management of the grounds to be exercised by the board. Inasmuch as the board is authorized to lease the grounds and buildings, the liability of the board for the condition of the grounds and the liability to persons injured on the grounds during the period of any lease of the grounds or buildings, or resulting from the use of the grounds or buildings by lessees, must be governed by the same principles which apply generally to situations growing out of the relations between landlords and their tenants.
 

 Manifestly, if the injury had occurred to the defendant in error while the annual fair was in session, or as a result of some act or omission of the officers and agents of the agricultural society, growing out of the conduct of the fair, a wholly different situation would result. We shall not inquire in this connection as to the liability of the agricultural society to its patrons, or the responsibility of the society for the condition of the grounds and build
 
 *568
 
 ings during the period of conducting its annual fair or the exhibitions in which it is directly engaged, or dangerous conditions growing out of such use, because none of those matters are involved in the instant controversy. It is sufficient to say that the agricultural society leased its premises to the Veterans of Foreign Wars, and that it had no privity of contract with De Michele. The agricultural society had a right to thus lease its premises and the lease was for a legitimate purpose.
 

 The fairgrounds in their entirety were leased to the Veterans of Foreign Wars, that organization giving up possession on the night of July 4th. While the record shows the existence of the explosive on the grounds twenty-five days later, and while the jury were warranted in finding that the explosive was left there by the lessee, or other persons associated with the lessee in the enterprise of staging the celebration, there is nothing to indicate that the lessor was interested even in the slightest measure in that enterprise, or that the lessor had anything to do with placing the explosive upon the grounds, or leaving it there. The society is not responsible for the acts of its tenant, or of those who may have business relations with such tenant; neither is it responsible for conditions created by the tenant upon the premises, unless the society knew of such conditions, or the circumstances were such as to impute notice or'knowledge thereof to the society. No such knowledge or circumstances have been shown. That these principles are sound and applicable during the period of occupancy by the tenant is settled by numerous decisions of this court.
 
 Burdick
 
 v.
 
 Cheadle,
 
 26 Ohio St., 393, 20 Am. Rep., 767;
 
 Langabaugh
 
 v.
 
 *569
 

 Anderson,
 
 68 Ohio St., 131, 67 N. E., 286, 62 L. R. A., 948;
 
 Shindelbeck
 
 v.
 
 Moon,
 
 32 Ohio St., 264, 30 Am. Rep., 584;
 
 Stackhouse
 
 v.
 
 Close,
 
 83 Ohio St., 339, 94 N. E., 746;
 
 Marqua
 
 v.
 
 Martin,
 
 109 Ohio St., 56, 141 N. E., 654;
 
 Neckel
 
 v.
 
 Fox,
 
 110 Ohio St., 150, 143 N. E., 389. If the lessor is not liable during the period of the tenant’s occupancy, it is not easy to see any basis for liability, after the tenant’s departure, for the acts of the tenant committed during occupancy. The only theory upon -which such a liability can be predicated is that there would be a duty devolving upon the lessor to keep the premises safe at all times, whether during or following such occupancy. If such a theory is sound, the liability for unsafe conditions would apply, whether made unsafe by a tenant during his occupancy, or by a stranger when the premises were unoccupied. Such a theory can only be sound if a duty devolves upon the owner to keep the premises safe and free from nuisance at all times. If the explosive had remained upon the grounds until the period of the annual fair, and it had injured a patron of the fair, the society could not escape liability on the ground that the explosive was left there by a tenant, or even a stranger. It is the duty of the society to make the ground safe for its patrons during that exhibition, or any other exhibition in which it had a proprietorship, or even an interest. The society did not place the explosive upon the grounds, did not consent to its being left there, and, so far as the record shows, did not know of its existence there, neither has anything been shown by this record to impute such knowledge to the society. The explosive was left in that portion of the grounds known as the infield, which is within
 
 *570
 
 the circle of the race track. While this portion was rented to the Veterans of Foreign Wars, it was not rented to the show company. The show company only rented that portion of the fairground south of the face track. While all patrons of the patriotic celebration were invitees to the infield, the public was only invited to that portion of the fairgrounds south of the race track to witness the carnival. The question arises, therefore, as to the status of the boys in going from that portion of the grounds where the carnival was to be held and entering the infield, which was not rented to the show company; that is to say, whether they were invitees, licensees, or trespassers. By the weight of authority, the public were only invitees as to that portion of the grounds which was actually rented to the show company.
 
 Bush
 
 v.
 
 Weed Lumber Co.,
 
 63 Cal. App., 426, 218 P., 618;
 
 Keeran
 
 v.
 
 Spurgeon Mercantile Co.,
 
 194 Iowa, 1240, 191 N. W., 99, 27 A. L. R., 579.
 

 The race track was inclosed in such a manner as to impose no barrier against persons who desired to enter the infield. The track is surrounded by a railing, over, under, and through which persons can pass without difficulty. As to the duty owing by the agricultural society, the most favorable view to the plaintiff would be that he was a gratuitous licensee.
 

 Counsel have not cited us to any case, and we are unable to find any authority, which holds the possessor of land liable to a gratuitous licensee for bodily harm caused by the dangerous condition in which the premises are permitted to remain, unless such possessor not only knew of the condition, but also knew that the licensee might reasonably be expected to encounter it in the exercise of his license.
 
 *571
 
 To the contrary, we cite the following:
 
 Larmore
 
 v.
 
 Crown Point Iron Co.,
 
 101 N. Y., 391, 4 N. E., 752, 54 Am. Rep., 718;
 
 Knight
 
 v.
 
 Abert,
 
 6 Pa., 472, 47 Am. Dec., 478;
 
 Fitzpatrick
 
 v.
 
 Cumberland Glass Mfg. Co.,
 
 61 N. J. Law, 378, 39 A., 675;
 
 Schiffer
 
 v.
 
 Sauer Co.,
 
 238 Pa., 550, 86 A., 479;
 
 Reardon
 
 v.
 
 Thompson,
 
 149 Mass., 267, 21 N. E., 369.
 

 It is claimed by the plaintiff, however, that the agricultural society owed a duty to the public at all times to keep the fairgrounds free from dangerous conditions which would be a menace to persons going upon the premises, and that this duty arises not out of the obligation due to persons lawfully on the premises by reason of having business relations with tenants, but grows out of the statutory duty devolving upon the society, its officers and agents, by reason of having the control and management of the fairgrounds. It is a sufficient answer to this claim to say that the fairground is not a public park over which the public may roam at will. The society and its officers and agents owe no duty to gratuitous licensees, except not to willfully or wantonly injure them, and to avoid exposing them to known dangers.
 

 In the trial of this case, the court did not define the duty of the agricultural society. On this ground alone, the charge is so deficient that it would be necessary to reverse the judgment. "Where there is no legal duty, there can be no actionable negligence. And where no legal duty has been defined, the jury is not warranted in finding that there has been such failure to discharge a duty as would justify an award of damages for negligence. Counsel for plaintiff insist in this court that the boys were invitees, and that the society owed a duty to keep
 
 *572
 
 the grounds in safe condition when the gates are open, and when any public exhibition is being conducted, whether or not the society has any interest in or control over the same. In the absence of the court’s instructions to the jury defining the duty of the society, it is fair to presume that counsel made the same argument to the jury which has been made in this court. It is therefore not strange that the verdict was rendered against the society. The Court of Appeals has fallen into the same error, and it is stated in the court’s opinion: “We believe that the position of the Agricultural Society is not unlike that of one who owns and conducts places of entertainment, where the public are invited, and the duty devolves upon him or it to exercise care that they are not injured while upon the premises. The Stark County Fairgrounds is not owned and operated like an ordinary plat of ground or land owned by a farmer, but it is exclusively managed and controlled by the Agricultural Society for purposes of entertainment and carnivals and shows and open air entertainments of practically every sort at the City of Canton, Ohio, were held upon the fair grounds, and the rental for the same is a source of revenue to the Agricultural Society.”
 

 Further discussion in the opinion of the Court of Appeals shows that the judgment was affirmed upon the theory of proprietorship of the agricultural society in the exhibitions staged by the lessees.
 

 For the foregoing reasons, the judgment against the agricultural society must be reversed.
 

 The verdict and judgment against the defendant De Michele can only be sustained if there was a joint liability on the part of De Michele with the agricul
 
 *573
 
 tural society. It is therefore not necessary to discuss the legal duty of De Michele, or whether he has failed to discharge such duty. The fact is that he was sued in a county other than that of his residence. Being a resident of Summit county, he could only be summoned in Stark county if the injury is the joint wrongdoing of himself and another defendant who is a resident of Stark county and served with process therein. In
 
 Gorey
 
 v.
 
 Black,
 
 100 Ohio St., 73, 125 N. E., 126, this problem was definitely dealt with and decided in the fourth syllabus: “In order to give the court jurisdiction over joint defendants who are non-residents of the county where suit is brought and for whom summons has been issued to another county, the averments of the petition and the proof on the trial must show that the plaintiff has a valid joint cause of action against the defendants on whom valid service is had as well as against the nonresident defendants.”
 

 The Veterans of Foreign Wars having been voluntarily dismissed from the case, and it having been found by this court that there is no liability on the part of the agricultural society, it follows that there can be no such joint liability as would justify the maintenance of the action against De Michele in a county other than that of his residence. The rule as to joint tort is one of no great difficulty. There is joint liability only where there is concert of action and a common intent and enterprise. Where two or more are engaged in an unlawful enterprise, each is individually responsible for all injuries committed in the prosecution of that enterprise, although the specific injury was done by one of the parties alone. Where a contractual relation exists between parties,
 
 *574
 
 the act of one is deemed that of the other though the original enterprise was not unlawful. Inasmuch as each of the parties becomes responsible for the acts of the other in a joint enterprise, the rule of joint liability should not be extended farther than the reasonable necessity of the rule. A multitude of cases have been decided on the subject of joint liability for tort, and while the rule seems plain the application of the rule to facts of controversies is not in all cases simple. Upon facts bearing strong analogy to the case at bar, and where the rule has been declared and applied, we find the case of
 
 Morris
 
 v.
 
 Woodburn,
 
 57 Ohio St., 330, 48 N. E., 1097, and direct attention to the very pertinent discussion at page 335 of 57 Ohio State, 48 N. E., 1097, where a distinction is made between primary and secondary liability. It is there stated that the primary liability rests upon him who actively creates the nuisance. In
 
 Village of Mineral City
 
 v.
 
 Gilbow,
 
 81 Ohio St., 263, 90 N. E., 800, 25 L. R. A. (N. S.), 627, it was decided that where a lot owner wrongfully and negligently maintains upon his premises a dangerous pit, which encroaches upon a sidewalk, without protection or warning to persons using the sidewalk, a joint liability does not attach to such lot owner and the municipality which wrongfully permits such sidewalk to be in such dangerous condition. The same principle is involved in the case of
 
 Bello
 
 v.
 
 City of
 
 Cleveland, 106 Ohio St., 94, 138 N. E., 526.
 

 Even if there were negligence on the part of the agricultural society, its want of care must be of a different character from that charged against De Michele. De Michele is liable, if at all, for his negligence in leaving the explosive upon the fair grounds,
 
 *575
 
 The agricultural society is liable only if, knowing the existence of the explosive on the grounds, it failed to remove it.
 
 Larmore
 
 v.
 
 Crown Point Iron Co.,
 
 101 N. Y., 391,
 
 4 N.
 
 E., 752,
 
 54
 
 Am. Rep., 718. The right of De Michele to be sued, if at all, in the county of his residence, is a valuable right, because of less annoyance and expense and greater facility for calling witnesses and securing counsel. It is a question of venue and within the control of the Legislature. The Legislature has defined the circumstances under which a party can be sued in a county other than that of his residence. After laying down the general rule as to venue, it is provided in Section 11277, General Code, that every other action must be brought in the county in which the defendant resides or may be summoned, with certain well-defined exceptions. In Section 11282 it is provided: “"When the action is rightly brought in any county, according to the provisions of the next preceding chapter, a summons may be issued to any other county, against one or more of the defendants, at the plaintiff’s request * * The action was rightly brought in Stark county against the Veterans of Foreign Wars and the agricultural society, but De Michele, not conceding a joint liability, promptly filed an answer disclaiming the right of the plaintiff to bring the action against him in Stark county, and at every step during the trial again asserted the want of joint liability. De Michele not being jointly liable with the agricultural society, the judgment as to him will be reversed.
 

 
 *576
 
 The judgment against the agricultural society will be reversed and final judgment rendered in its favor.
 

 Judgments reversed.
 

 Kinkade, Robinson, Day and Alijen,, JJ., concur.
 

 Matthias, J., concurs in the judgment of reversal.