MELVILLE, GDN., APPELLANT, *v.* THE GREYHOUND CORP. ET AL., APPELLEES.

(No. 7719—Decided May 4, 1953.)

*Mr. Roy L. Struble,* for appellant.

*Messrs. Long & Bloom, Messrs. Rendigs, Fry & Kiely,* and *Messrs. Gorman, Silversteen & Davis,* for appellees.

HILDEBRANT, J. The Common Pleas Court sustained the demurrer of defendant Briol to the amended petition on the grounds of misjoinder of causes of action and parties defendant and that the facts contained in such petition failed to state a cause of action against him. Plaintiff, not desiring to plead over, appeals on questions of law.

The allegations of the petition admitted to be true upon demurrer, in substance, are that on June 3, 1950, at about 3 p. m., plaintiff's ward was a guest-passenger in the automobile of defendant Briol, being driven by him in a southerly direction on U. S. route No. 42, between Mason and Cincinnati, Ohio, and approaching the intersection of U. S. route No. 42 with Snyder road from the east; that at the same time, a bus of the defendant company was being driven in a northerly direction over U. S. route No. 42 and approaching its intersection with Snyder road; that it was raining at the time and place, with a consequent lowering of the driver's visibility, and the surface of the paved highway was wet and slippery, creating a dangerous and hazardous driving condition; and that at such time and place, defendant Briol attempted to make a left turn from U. S. route No. 42 into Snyder road and in so doing drove his automobile in front of and across the path of defendant's bus in such a manner that a collision ensued, wherein plaintiff received the injuries set forth in the petition.

In a first cause of action, plaintiff charges wilful and wanton misconduct on the part of both defendants as follows:

"The driver of the bus of defendant, The Greyhound Corporation, was operating said large and heavily loaded bus at a high, excessive and dangerous rate of speed, to wit, 85 miles per hour, with total indifference and disregard to the attendant danger and the safety of the said Josselyn Farmer, in that at the time he

well knew that it was raining; that visibility was impaired and poor; that the surface of said highway was wet and slippery; that the improved portion of said highway in the vicinity was narrow, heavily travelled and crowded; that said bus was large, heavy, and overloaded with passengers, and as a consequence, was rendered extremely difficult to control and stop.

"The defendant, Paul A. Briol, knowingly, intentionally and wilfully drove his said automobile directly into the path of said bus, with total indifference and disregard to the attendant danger, and the safety of said Josselyn Farmer."

In a second cause of action, plaintiff reaffirms the allegations contained in the first cause of action and charges defendant company with negligence in the operation of its bus, in violation of certain safety regulations promulgated by the Public Utilities Commission of Ohio, and in driving at a greater speed, to wit, 85 miles per hour, than was reasonable and proper, having regard to the traffic, surface, and width of the highway and the conditions then existing. It is claimed defendant Briol was "guilty of wilful and wanton misconduct in the operation of his said automobile in that he drove said automobile into the path of said motor bus, well knowing and appreciating that to do so would endanger and in all probability injure Josselyn Farmer, and with total indifference and disregard to the attendant danger, and the safety of said Josselyn Farmer."

It is then charged that the conduct of both defendants was the direct and proximate cause of the collision and resulting injuries.

First, taking up the sufficiency of the petition to state a cause of action against defendant Briol under Section 6308-6, General Code (the guest statute), the Supreme Court in *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646,

defines wanton misconduct in paragraph two of the syllabus as follows:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (*Higbee Co.* v. *Jackson,* 101 Ohio St., 75, third paragraph of the syllabus, and *Reserve Trucking Co.* v. *Fairchild,* 128 Ohio St., 519, second paragraph of the syllabus, modified.)"

In *Tighe, a Minor,* v. *Diamond,* 149 Ohio St., 520, 80 N. E. (2d), 122, wilful misconduct is defined in paragraphs three and four of the syllabus:

"'Wilful misconduct,' as used in the Ohio guest statute, Section 6308-6, General Code, and in the Ohio minor automobile operators responsibility statute, Section 6296-10, General Code, implies an intention or purpose to do wrong, an intentional deviation from clear duty or from a definite rule of conduct, and not a mere error of judgment.

"'Wilful misconduct' on the part of a motorist, within the meaning of the Ohio guest statute, Section 6308-6, General Code, and the Ohio minor automobile operators responsibility statute, Section 6296-10, General Code, is either the doing of an act with specific intent to injure his passenger or, with full knowledge of existing conditions, the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct."

A subsequent definition of both terms, wanton, and, wilful, appears in *Ulrich, a Minor,* v. *Massie,* 89 Ohio App., 362, 102 N. E. (2d), 274, paragraphs one and two of the syllabus:

" 'Wanton misconduct,' as referred to in the Ohio guest statute (Section 6308-6, General Code), is such conduct as manifests a disposition to perversity under such existing conditions that the party doing the act or failing to act must be conscious, from his knowledge' of such existing conditions, that his conduct in all probability will result in injury.

" 'Wilful misconduct,' as that term is used in the Ohio guest statute, connotes an intention or purpose on the part of a motorist to do wrong, coupled with either the doing of an act with the specific intent to injure a guest-occupant of the automobile, or, with full knowledge of existing conditions, an intentional wrongful course of conduct which such motorist knows should not be carried out, or the intentional failure to do something which such motorist knows should be done in connection with the operation of the automobile, under such circumstances that the motorist knows or should know that injury to the guest-occupant will probably result."

It will be noted that the amended petition alleges that defendant Briol drove his automobile into the path of the bus, well knowing and appreciating that to do so would endanger and in all probability injure the plaintiff and with total indifference and disregard to the danger and safety of plaintiff.

We are of the opinion that such allegations state a cause of action under Section 6308-6, General Code, and that if plaintiff can produce substantial evidence in proof thereof and that such conduct was a proximate cause of the injuries complained of, a jury question will be presented.

Plaintiff states the basic question to be one of join-

der, which, in substance, is: May defendants, one of whom is charged with ordinary negligence, the other with wilful and wanton misconduct be joined?

The Ohio statute, Section 11255, General Code, provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein."

Plaintiff relies almost exclusively on *Meyer* v. *Cincinnati Street Ry. Co.*, 157 Ohio St., 38, 104 N. E. (2d), 173, wherein it is stated in paragraphs one and two of the syllabus:

"Where damage or injury is proximately caused by independent but concurrent wrongful acts of two or more persons, joint liability results, and such wrongdoers may be joined as defendants even though they may not have acted in concert in the execution of a common purpose and the want of care of such defendants may not have been of the same character, and joint or several judgments may be rendered against such wrongdoers.

"The predicate of joint liability is not necessarily limited to the commission of a joint act or joint tort. (Paragraph three of the syllabus of *Stark County Agricultural Society* v. *Brenner, an Infant*, 122 Ohio St., 560, overruled.)"

In the opinion, the court traces the departure from the earlier rule that joint liability could arise only from joint tort to the concept that independent concurrent acts may produce a single injury giving rise to joint liability, and at page 41, states:

"The concept that 'joint liability' can arise only from the commission of a 'joint tort' is fundamentally unsound. Joint *liability* can arise from the concurrent commission of independent wrongful acts, each

having causal connection with the injury or damage complained of.''

Again, at page 44, *ibid.*, it is stated:

''The right of joinder of defendants is not governed by the respective degrees of care which the law requires to be exercised by the wrongdoers toward the injured person. The extent or character of the duty owed by each to the injured person is not controlling. The duty owed the plaintiff by each of the defendants is a matter to be covered by the trial judge in the charge to the jury. If two or more persons have concurrently committed independent wrongful acts each having proximate causal connection with the injury or damage complained of, each of such persons has such interest in the controversy adverse to the injured person as to warrant joinder of such persons as defendants in an action brought by the injured or damaged person.''

Defendant contends that the law of the *Meyer case, supra*, is, by its facts, confined to the independent concurrent acts of negligence only; that concurrent negligence is the basis for joinder, not concurrence of wrongful acts; and that joinder is not proper here, because defendants are charged with entirely different violations of duty towards the plaintiff. It is urged further that confusion would result at a trial from the fact that one charged with wanton and wilful misconduct is denied the defense of contributory negligence, available to the defendant whose liability is governed by the law of negligence alone, and that the charge of wilful and wanton misconduct against Briol rules out the possibility of the alleged negligence of the defendant company being other than a remote cause, thereby barring recovery against it.

As to confining the authority of the *Meyer case, supra*, to independent concurrent acts of negligence only, this court is aware of the rule that the syllabus

of a Supreme Court decision states the law, and that it must be interpreted with reference to the facts of the case and the questions presented and considered by the court and cannot be construed any broader than the facts warrant. However, it is said in 11 Ohio Jurisprudence, 798, Section 145:

"It is not possible for a court to comprehend in every syllabus all the many phases of facts that may arise in other litigations touching similar transactions. * * * When it is sought to apply the rule stated in one syllabus in a subsequent case, the primary inquiry should be whether or not the facts are substantially similar, and, if not, whether the reason that would impel the establishment of the rule is the same in the one instance as in the other."

Again, commenting on the fact that obiter may creep into a syllabus, it is stated at page 798, *ibid.*: "It has been stated, however, that where obiter has been carried into the syllabus by the Supreme Court, an intention to declare it a rule of law of the state is shown." *Ward* v. *Swartz*, 25 Ohio App., 175, 158 N. E., 318, is cited in support of the text, opinion by Williams, J., later a member of the Supreme Court.

In *Universal Concrete Pipe Co.* v. *Bassett, supra,* wherein the difference and distinction between wanton and wilful misconduct and negligence is pointed out, the court said as to joinder, at page 579:

"While wanton misconduct and ordinary negligence are, as a matter of law, as far apart as the poles of the axis, under our liberal code pleading (Section 11306, General Code) they are joinable in one action, as they grow out of the same transaction; but they are just as repugnant and inconsistent as it is possible for two causes of action to be."

In answer to that contention, we are of the opinion that the facts of the case at bar are substantially similar, in that a combination of conduct ending in one re-

sult and occurring at the same time and place is common to both cases, and that the rationale of the *Meyer case* would appear to apply equally well to the case at bar.

As to the contention that joinder is improper because defendants are charged with entirely different violations of duty toward plaintiff, the *Meyer case* holds that that is not the test, and we call attention to the similarity of duty, in that prior to passage of the guest statute, liability in damages at common law was, as to both defendants, grounded equally on ordinary negligence and wanton and wilful misconduct. The guest statute created no new liability, but only restricted the liability of the host and deprived him of the defense of contributory negligence. We see no reason why a charge defining contributory negligence and stating it to be available as a defense to one defendant, but not to the other, should be confusing.

Whether wilful and wanton misconduct on the part of defendant Briol would render any negligence of defendant company only a remote cause would seem to depend upon whether under the circumstances here present such conduct on the part of defendant Briol could have been reasonably anticipated or reasonably might have been foreseen by the driver of defendant's bus.

It is said in 38 American Jurisprudence, 726, Section 70:

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause so that the negligence is not actionable, is subject to the qualification that if an intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of an injury, and he may be held liable, notwithstanding the intervening cause. The

intervention of independent intervening causes will not break causal connection if the intervention of such forces was itself probable or foreseeable. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. The theory is that negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated, so that the negligence can be regarded as a concurrent cause of the injury inflicted, which, as hereinbefore stated, is a cause which the law regards as responsible. While the act of a responsible person is not an intervening cause which a tort-feasor guilty of negligence is absolutely bound to foresee, a defendant is not relieved from responsibility for his negligence by the intervention of the acts of third persons, including the act of a child, if those acts were such as would have been anticipated by an ordinarily prudent person standing in the position of the defendant. Much depends upon the character of the intervening act in determining whether or not it reasonably might have been anticipated. It is material, therefore, whether the intervening act was a criminal or merely a negligent act, or one which involved neither negligence, illegality, nor wrong of any kind.''

Again, on page 728, Section 71, *ibid.*, it is stated:

''The general rule is that when, between negligence and the occurrence of an injury, there intervenes a wilful, malicious, and criminal act of a third person which causes the injury but was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken.''

However, it is further stated at page 729, *ibid.*:

"The rule that the negligence of a defendant does not render him liable for the consequences of an intervening criminal act which was not foreseen by him does not exempt him from liability where his negligence continued to, and concurred with, the criminal act in causing an injury."

This principle has the sanction of many decided cases as indicated in 34 Fifth Decennial Digest (American Digest System), 1374, "Negligence," 62 (3).

A succinct statement of the principle is found in the Iowa case of *Blessing* v. *Welding,* 226 Iowa, 1178, 286 N. W., 436, wherein it is stated:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes a person negligent, such act whether innocent, negligent, intentionally tortious or criminal does not prevent the first person from being liable for injury caused thereby."

A case quite similar on its facts is that of *Nichols* v. *City of Phoenix,* 68 Ariz., 124, 202 P. (2), 201. In that case a speeding bus traveling over a main thoroughfare was struck by an automobile at the intersection of a lateral road, the driver ignoring a stop sign applicable to him and driving into the path of the bus. The conduct of the driver was a misdemeanor under Arizona law. The court, at page 139, states:

"We do hold that, under the facts peculiar to this case, sufficient evidence was introduced to call for a submission to the jury, as factual matters upon which the minds of reasonable men might differ, the questions of negligence and proximate cause."

Under the circumstances here of two vehicles proceeding in opposite directions upon a main highway and approaching each other so as to meet at a point where such highway is intersected by another road, a realizable likelihood that a turn by either vehicle

might be attempted is presented so that that likelihood becomes one of the hazards reasonably foreseeable on the part of both drivers. Included in the likelihood of a turn is the reasonable possibility that it might be attempted in any conceivable manner. We, therefore, are of the opinion that the question of proximate cause under the circumstances here presented is one for the jury.

Finally, it is observed that the question here presented is one of remedy rather than substantive right, and the court can find no logic in denying joinder, or any prejudice in permitting complete adjudication of the rights and liability of all parties growing out of the incident occurring at the same time and place. This conclusion is consistent with a liberal interpretation of the Ohio statute and the modern trend in judicial concept.

The judgment is, therefore, reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

MATTHEWS, P. J., ROSS and HILDEBRANT, JJ., concur.