*436
 
 Gorman, J.
 

 The first question to determine is whether the trial court erred in refusing to remove the cause to the District Court of the United States. From an inspection of the petition and the application for removal, it appears' that Armour & Company, being incorporated under the laws of Kentucky, is to be considered a citizen of that state while both Kniess, the plaintiff, and Burmeister, a joint defendant, are citizens of the state of Ohio. It is obvious that the ground for removal is that there was a diversity of citizenship in respect to Armour & Company and the plaintiff Kniess.
 

 Where there are two defendants, one a resident of this state and one not, removal will be ordered only if there is a separable controversy which exists between the resident and nonresident parties. The controversy must be “wholly between citizens of different states, and which can be fully determined as between them” in the federal courts or the petition for removal should be denied. Title 28, Sections 71 and 72, U. S. Code. See also
 
 Removal Cases,
 
 100 U. S., 457, 25 L. Ed., 593;
 
 Barney
 
 v.
 
 Latham,
 
 103 U. S., 205, 26 L. Ed., 514;
 
 Graves
 
 v.
 
 Corbin,
 
 132 U. S., 571, 33 L. Ed., 462, 10 S. Ct., 196.
 

 If the interests, upon joinder in the state court, are joint the federal courts cannot acquire jurisdiction because all of the persons concerned are not competent to sue or liable to be sued in the United States courts. There may be removal, however, by such defendants as are of diverse citizenship when the interests are separable. The cause is separable where a distinct suit may be brought against the defendants seeking-removal and complete relief afforded' without all of the original defendants being- joined. See Marshall, C. J., in
 
 Strawbridge
 
 v.
 
 Curtiss
 
 (1806), 7 U. S. (3 Cranch), 267, 2 L. Ed., 435.
 

 After considerable uncertainty the courts finally
 
 *437
 
 held that the question of removal must be determined from the record at the time the petition for removal is filed.
 
 Alabama Great Southern Ry. Co.
 
 v.
 
 Thompson,
 
 200 U. S., 206, 50 L. Ed., 441, 26 S. Ct., 161;
 
 Southern Ry. Co.
 
 v.
 
 Miller,
 
 217 U. S., 209, 54 L. Ed., 732, 30 S. Ct., 450. While this rule has' been subject to severe criticism by both 'writers and judges (88 Central Law Journal, 246;
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 Western Union Telegraph Co.,
 
 218 F., 81, 93;
 
 Hagerla
 
 v.
 
 Mississippi River Power Co.,
 
 202 F., 771, 773), it is settled today that the determination of the nature of the controversy must be decided solely upon the allegations contained in the petition.
 
 Geer
 
 v.
 
 Mathieson Alkali Works,
 
 190 U. S., 428, 47 L. Ed., 1122, 23 S. Ct., 807;
 
 Fraser
 
 v.
 
 Jennison,
 
 106 U. S., 191, 27 L. Ed., 131, 1 S. Ct., 171;
 
 Moloney
 
 v.
 
 Cressler,
 
 210 F., 104.
 

 True a fraudulent joinder will not prevent removal, but we are not presented with any such claim in this case. See
 
 Wecker
 
 v.
 
 National Enameling & Stamping Co.,
 
 204 U. S., 176, 51 L. Ed., 430, 27 S. Ct., 184.
 

 It has always been held that the law of the state from which removal is sought determines whether the controversy is a separable one.
 
 Cincinnati, N. O. & T. P. Rd. Co.
 
 v.
 
 Bohon,
 
 200 U. S., 221, 50 L. Ed., 448, 26 S. Ct., 166;
 
 Chicago & Alton Ry. Co.
 
 v.
 
 McWhirt,
 
 243 U. S., 422, 61 L. Ed., 826, 37 S. Ct., 392;
 
 Chicago, Rock Island & Pacific Ry.
 
 v.
 
 Dowell,
 
 229 U. S., 102, 57 L. Ed., 1090, 33 S. Ct., 684;
 
 Norwalk, Admx.,
 
 v.
 
 Air-Way Electric Appliance Corp., 87
 
 F. (2d), 317, 110 A. L. R., 183, and see annotation at page 191.
 

 It is our task to determine whether Burmeister and Armour
 
 &
 
 Company were properly joined as defendants under the laws of Ohio, and this question is to be adjudicated solely upon an examination of the allegations contained in the petition of the plaintiff.
 

 
 *438
 
 The essential portions of the petition are set forth in the statement of facts. In passing upon that question, the Court of Appeals said:
 

 “The consumer of unwholesome food has a right of action, not only against the retailer who sold it to him, as in the
 
 George
 
 and
 
 Hughes cases
 
 [111 Ohio St., 775, 146 N. E., 283, and 131 Ohio St., 501, 3 N. E. (2d), 415], but may also sue the wholesaler;
 
 Ward Baking Co.
 
 v.
 
 Trizzino,
 
 27 Ohio App., 475; and this .right is clearly recognized in
 
 Canton Provision Co.
 
 v.
 
 Gauder,
 
 130 Ohio St., 43, see page 46, even though there is no contractual obligation between the producer and the injured person.
 

 “In the
 
 Gauder case,
 
 the unwholesome food was called ‘liver pudding’ which had been processed by the provision company and put in wrappers bearing the stamp of that company. This was sold in the original packages at retail to the mother of plaintiff who was rendered ill by eating some of it. He sued both the packer and retailer. The Supreme Court- held that both were liable but that the liability of the packer was primary and that of the retailer was secondary, and accordingly their liabilities were several and not joint. This results from the. retailer not having knowledge or the means of knowledge as to the unwholesomeness of the product he bought and sold in the package as it came from the packer.
 

 “Armour & Company cite this case and many others to support" its claim that its liability to the plaintiff, if any, is severable from that of Burmeister. An examination of the other cases cited reveal [reveals] facts similar to those in the
 
 Gauder case,
 
 that is, the unwholesome food was in such form due to processing or packing that the unwholesomeness of it was caused by one, and the other was only secondarily liable therefor.
 

 “The case at bar differs from all of them in two
 
 *439
 
 respects — the pork was not in packages, and the alleged unwholesomeness of the pork was due to the presence in it of the trichinae. They were in it before the swine were slaughtered by Armour & Company — they were in it when sold by it to Burmeister — and when sold by him to the plaintiff. So far as the record at this time disclosed, the unwholesomeness of the pork when sold to plaintiff was not due to anything Burmeister did or omitted to do to it in making it into metwurst. Both defendants had equal opportunity to know of the presence of the parasites, hence neither can say the other was primarily liable to the plaintiff. It was by their combined, concerted and continuing-action, each with equal opportunity of knowledge of the facts, that injury resulted to the plaintiff. They had a common purpose in these transactions, namely, to sell the pork to a consumer who, as alleged in the petition, happened to be the plaintiff, and the want of care of each was' of the same character.
 

 “Thus their joint liability fits the rule laid down in syllabus 3 of
 
 Stark County Agr. Society
 
 v.
 
 Brenner,
 
 122 Ohio St., 560, which is the authority for the distinction made in the
 
 Gauder case, supra.”
 

 In support of the contention that this was a correct interpretation, counsel for appellee in their brief say:
 

 “It is thus apparent that the combined acts of the two defendants produced the injury of which plaintiff complains. Those acts, in the case of each defendant, were a violation of the Pure Pood Laws of Ohio by selling for human consumption a food product which was adulterated, diseased, and infected with these parasites. - 1
 

 “Had Armour & Company not sold this diseased meat to Burmeister at wholesale, or had Burmeister not made it into sausage of which plaintiff thereafter partook, plaintiff would not have contracted the disease of trichinosis.
 

 
 *440
 
 “Clearly, therefore, their negligence was joint.
 

 “But even if the negligence is regarded as both joint and several, so that plaintiff might have sued either of the defendants without joining the other, nevertheless, the law is that no separable controversy exists.”
 

 Even the most casual examination of the petition shows that the claim is made that Armour & Company was liable because it sold unwholesome food, known as Boston butts, for human consumption. It is claimed further that Burmeister chopped up the Boston butts, placed them in a metwurst sausage, and after smoking or curing them, sold them as a food product ready for human consumption, without cooking or further treatment.
 

 While the evidence adduced at the trial shows Armour & Company knew, when it sold the Boston butts, that they were to be used in metwurst, there is no allegation in the petition that they had such knowledge. In passing upon the question of removal, unfortunately we are limited solely to a consideration of the facts stated in the petition.
 

 Both defendants, Armour & Company and Burmeister, are charged jointly with negligence by selling unwholesome food contrary to Section 12760, General Code. Stripped of all refinements and subtleties, the question resolves itself into whether under our law a manufacturer or packer of food products and a retailer can be joined together as defendants in an action by a consumer who claims he was rendered ill by the alleged unwholesome products which were manufactured and sold. The Court of Appeals held that by such marketing of food products the defendants joined tog-ether in combined and concerted action.
 

 Section 11255, General Code, provides: “Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff,
 
 *441
 
 or who is a necessary party to a complete determination or settlement of a question involved therein.”
 

 Courts and legal writers have universally held that under such a type of statute joint tort-feasors may be joined. In fact it seems to be essential that the liability be joint to permit a joinder.
 
 Jack
 
 v.
 
 Hudnall, 25
 
 Ohio St., 255, 18 Am. Rep., 298;
 
 French, Admr.,
 
 v.
 
 Central Construction Co.,
 
 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A. (N. S.), 669; Pomeroy, Code Remedies (5 Ed.), Section 209.
 

 Our problem is thus simplified, because it has been held that a statute which permits joinder merely for convenience, irrespective of the nature of the cause of action, cannot oust the federal courts of jurisdiction.
 
 Young
 
 v.
 
 Southern Pacific Co., 15
 
 F. (2d), 280.
 

 It is claimed by appellant that, if an action could be maintained against Armour & Company under these circumstances, fresh pork could not be sold in this state. The petition, however, alleges that-the Boston butts were not wholesome and were adulterated, diseased and infected. In the very recent case of
 
 Greco, Admr.,
 
 v.
 
 S. S. Kresge,
 
 277 N. Y., 26, 12 N. E. (2d), 557, 115 A. L. R., 1020, decided January 18, 1938, it was' held that, where it was pleaded that food was offered for human consumption, a purchaser of sausage who contracted trichinosis through eating it had a right of action on contract for damages against the seller since there was an implied warranty of its fitness for human consumption.
 

 This not only disposes of that contention of appellant, Armour
 
 &
 
 Company, but sets forth that Burmeister could be held liable on contract.
 

 However, the liability of Burmeister as a retailer might sound in tort as well as in contract for as has been well said the action on a “warranty is a hybrid between tort and contract.” 5 Williston on Contracts (Rev. Ed.), 4200, Section 1505. See also
 
 Yochem
 
 v.
 
 *442
 

 Gloria, Inc., ante,
 
 427. This court in an analogous case where the sale of an inherently dangerous article was involved approved a joinder of actions in both contract and negligence. See
 
 Sicard
 
 v.
 
 Kremer,
 
 133 Ohio St., 291, 295, 13 N. E. (2d), 250.
 

 W.e, therefore, must conclude that the theory upon which an action can be maintained against Burmeister as a retailer for the sale of unwholesome food can be predicated on either contract or tort, and that the adoption of Section 12760, General Code, has not changed the underlying theory of the cause of action.
 

 What is, however, the theory upon which a manufacturer or packer is held liable to the ultimate consumer of unwholesome food sold through a retailer? Some few courts have said that there was an implied warranty of wholesomeness and consequently there was privity of contract. Others have said that if the negligence of the manufacturer in preparing the food causes damage to the ultimate consumer, that fact could reasonably be anticipated and privity of contract is not essential. Some have allowed a recovery either upon the theory of negligence or contract, but not both. The sale most frequently has been likened to that of poisonous drugs and injurious.' patent medicines, where the careful compounding is demanded by public policy. See 17 A. L. R., 672; 39 A. L. R., 992; 63 A. L. R., 344; 105 A. L. R., 1502; 11 A. L. R., 1239.
 

 It seems to the court that of all of these theories, the one last mentioned is the most persuasive. Public policy demands that care and caution should be exacted from manufacturers of food who sell for the purposes of general disposition and sale to the general public. In other words the manufacturer or packer warrants to the public generally that the food produced is fit for human consumption. See 42 Harv. Law Rev., 414.
 

 Upon the allegations of the petition liability is effectively charged against both Burmeister and A.r
 
 *443
 
 mour & Company, but the underlying theories are not identical.
 

 In
 
 Canton Provision Co.
 
 v.
 
 Gauder,
 
 130 Ohio St., 43, 196 N. E., 634, this court held that in the sale of unwholesome food in packages the manufacturer was primarily liable to the consumer, and the retailer was secondarily liable. See also
 
 Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283;
 
 Great Atlantic & Pacific Tea Co.
 
 v.
 
 Hughes,
 
 131 Ohio St., 501, 3 N. E. (2d), 415.
 

 We are unable to conclude that, because the sale of Boston butts was not made in sealed packages, the liability of Armour & Company and Burmeister became joint. In fact, as alleged here, Burmeister placed the pork in sausage which might have deceived the customer. From the allegations of the petition we can only conclude that Armour & Company did not have knowledge of such a transaction taking place.
 

 In the
 
 Canton Provision Co. case,
 
 Judge Williams pointed out, at page 46 of the opinion, that “a manufacturer of unwholesome food is not only liable for the sale to the consumer through a retailer, but also to the retail dealer, in a proper case, for damages for loss of business and reputation from re-sale of the injurious product.”
 

 If Burmeister has such an’ action against Armour & Company for selling unwholesome food to him and we should hold that the liability to the consumer is joint, the cause of action of Burmeister would be destroyed, since there cannot be contribution among joint tort-feasors in this state. See
 
 Adams Express Co.
 
 v.
 
 Beckwith,
 
 100 Ohio St., 348, 126 N. E., 300;
 
 Pennsylvania Co.
 
 v.
 
 West Penn Rys. Co.,
 
 110 Ohio St., 516, 144 N. E., 51;
 
 Automobile Insurance Co.
 
 v.
 
 Pennsylvania Railroad Co.,
 
 133 Ohio St., 449, 457.
 

 We are not aware of any case where a retailer and manufacturer have been properly joined as defend
 
 *444
 
 ants. In an action where an explosive was sold and an attempt was made to join both a nonresident manufacturer and a resident retailer, the court held that a separable controversy existed between the purchaser and the manufacturer. See
 
 Johnson
 
 v.
 
 Coast Manufacturing & Supply Co.,
 
 53 F. (2d), 271.
 

 In
 
 Stark County Agricultural Society
 
 v.
 
 Brenner,
 
 122 Ohio St., 560, 172 N. E., 659, the question was whether the Stark County Agricultural Society was jointly liable with a lessee who had permitted a firecracker to remain on the premises which exploded and caused an injury to a child. At page 574 of the opinion the court said:
 

 “Even if there were negligence on the part of the agricultural society, its want of care must be of a different character from that charged against DeMichele. DeMichele is liable, if at all, for his negligence in leaving the explosive upon the fair grounds. The agricultural society is liable only if, knowing the existence of the explosive on the grounds, it failed to remove it.”
 

 By analogous reasoning in the instant case Armour & Company could not possibly be jointly liable if it did not know that Burmeister was to put the Boston butts in skins and sell them for human consumption.
 

 As the allegations of the petition stand it can hardly be said that the liability of Armour & Company would be the same when the pork was sold in metwurst as it would be if Burmeister had sold the Boston butts over the counter in the same form as he received them from Armour
 
 &
 
 Company.- In either instance, however, the liability of Armour & Company was primary and that of Burmeister secondary. There was no privity of contract between Kniess and Armour & Company as there was between Kniess and Burmeister. Differing in degree, and differing in nature, the liability of Armour & Company and Burmeister cannot be joint. Their alleged torts were different in
 
 *445
 
 character and kind, and were not concurrent.
 
 Morris
 
 v.
 
 Woodburn,
 
 57 Ohio St., 330, 48 N. E., 1097;
 
 Village of Mineral City
 
 v.
 
 Gilbow,
 
 81 Ohio St., 263, 90 N. E., 800.
 

 For the reasons stated we are constrained to hold that a separable controversy did exist between the plaintiff, Kniess, ánd Armour & Company. The defendant, Armour & Company, adequately preserved its exceptions to the ruling of the court denying the petition for removal. Burmeister filed a demurrer' on the ground of misjoinder, asserting that there was a want of joint liability. Therefore, the judgment, which was a joint one, cannot stand as to either defendant. See
 
 Stark County Agricultural Society
 
 v.
 
 Brenner,
 
 supra, at page 575. For the reasons stated the trial court erred, and the cause is therefore reversed and remanded to the Court of Common Pleas with instructions to grant the petition of Armour & Company to remove the cause to the District Court of the United States.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Matthias and Williams, JJ., concur.
 

 Zimmerman, J., concurs in judgment.