## HUNTER v. DERBY FOODS, Inc.
### No. 245.

Circuit Court of Appeals, Second Circuit.
April 8, 1940.

971

Lewis A. Ackley, Arthur K. Wing, and James G. Purdy, all of New York City, for appellant.

Alexander A. Mayper, David Lazarus, and Louis Otten, all of New York City, for appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

Dean, the plaintiff's intestate, died after an illness of only eight or nine hours. The plaintiff alleged that death was caused by eating canned meat prepared or distributed by the defendant. The case was submitted to a jury and a verdict returned for the plaintiff. On appeal the defendant urges that no liability was proved, and that the trial judge erred in rulings on evidence.

Dean bought a can of corned beef at a grocery, ate part of it for supper the same day, was taken ill around midnight, and died at about nine the next morning. These events took place in Massillon, Ohio, where Dean lived. The grocer had bought the can of beef from a wholesale house in Cleveland, Ohio, which in turn had bought it from the defendant. The can was marked "Derby Corned Beef", with the name of the defendant as "distributor". The beef had been processed and canned in South America by another concern, imported by the defendant, and shipped by the defendant from New York to the Cleveland wholesaler. The defendant insists that there was not enough evidence that the beef had anything to do with Dean's death. The cause of death was closely disputed. Most of the proof bore upon that issue. Although the plaintiff's case had elements of weakness, it was strong enough in our opinion to require submission of the issue to the jury. The trial judge put it to the jury to say whether the beef was unwholesome and if so whether Dean's death occurred as the result of eating it. Unless there was error in the rulings on evidence, we are bound by the verdict to take it that death was caused by contaminated beef. Whether we would have reached the same verdict if we had sat as jurors is of no moment.

While the plaintiff pleaded that the defendant was negligent, he offered no proof of actual fault. He relied at the trial on an Ohio statute, section 12760 of the Ohio Code: "Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both."

The judge instructed the jury that violation of the statute was negligence as matter of law and that if they were satisfied that the beef was unwholesome and caused the death, the plaintiff should have a verdict. The defendant insists that the issue of negligence, in the sense of lack of due care on the defendant's part, should have been submitted to the jury.

It is commonly recognized that the law of the place of wrong governs the right of action for wrongful death, no matter where suit is brought. Northern Pacific R. Co. v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 950; Slater v. Mexican Nat. R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900; Vancouver S. S. Co. v. Rice, 288 U.S. 445, 53 S.Ct. 420, 77 L.Ed. 885. It is the same with torts generally. American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; Cuba R. Co. v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, 38 L.R.A.,N.S., 40. Cases where the defendant's conduct occurs in one state and the injury is done in another bring in difficul-

ties. See Cook, Tort Liability and Conflict of Laws, 35 Col.L.Rev. 202. In such cases the place of the wrong, the "locus delicti", is taken by courts in this country to be the state where the last event necessary to make the actor liable occurs. Restatement of Conflict of Laws, section 377 and note; Goodrich on Conflict of Laws (2d Ed.), section 90. In the present instance that place was in Ohio, where the deceased ate the food, took sick and died, and it is not necessary to go into finer distinctions between the place of injury and the place of death. The fact that the defendant's conduct occurred in New York does not oust the law of Ohio. It sent the food into Ohio, where the harm was done. The case is like that of shooting a firearm across the state line, starting a fire which passes the line, or owning a vicious animal which strays over the line. Keeler v. Fred T. Ley & Co., 1 Cir., 49 F.2d 872; Moore v. Pywell, 29 App.D.C. 312, 9 L.R.A.,N.S., 1078; Otey v. Midland R. Co., 108 Kan. 755, 197 P. 203; Le Forest v. Tolman, 117 Mass. 109, 19 Am.Rep. 400; Connecticut Valley Lumber Co. v. Maine R. Co., 78 N.H. 553, 103 A. 263; Dallas v. Whitney, 118 W.Va. 106, 188 S.E. 766. See also Beale on Conflict of Laws, section 377.2; Developments in Conflict of Laws, 50 Harv.L.Rev. 1168. By settled rules of conflict of laws, the defendant's liability is measured by the domestic law of Ohio, to the same extent as if it had been present and had made the sale there. See Scheer v. Rockne Motors Corporation, 2 Cir., 68 F.2d 942, 944.

In Ohio the courts hold that the penal statute already referred to was passed for the protection of the public, and that the sale of unwholesome food in violation of it renders sellers civilly liable in damages to those injured, without regard to negligence in the ordinary sense of the word. Violation is deemed "negligence per se", the meaning being of course that one injured may recover without proving want of due care on the part of the seller. Portage Markets Co. v. George, 111 Ohio St. 775, 146 N.E. 283; Great Atlantic & Pacific Tea Co. v. Hughes, 131 Ohio St. 501, 3 N.E.2d 415. It is not essential to recovery that there be privity of contract between the person injured and the defendant. Kniess v. Armour & Co., 134 Ohio St. 432, 17 N.E.2d 734, 119 A.L.R. 1348; Drock v. Great Atlantic & Pacific Tea Co., 61 Ohio App. 291, 22 N.E.2d 547. It is

true that liability for tort arising in another state will not be enforced in the forum if contrary to local public policy. But there is no reason to suppose that the liability derived in this case from Ohio law is offensive to the public policy of New York. Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N.E. 198. In New York likewise it is the rule that violation of a penal statute passed for protection of the purchasing public constitutes actionable default, "negligence per se", and gives a right of recovery to persons injured by the violation. Pine Grove Poultry Farm, Inc. v. Newtown By-Products Mfg. Co., 248 N. Y. 293, 162 N.E. 84. It follows that the charge of the judge, to the effect that the plaintiff was not required to prove lack of care on the defendant's part, was a correct statement of the applicable law.

There remain the rulings on evidence. The plaintiff tendered the death certificate signed by the county coroner. It was admitted over the defendant's objection. The coroner was not called, having died prior to trial. The certificate was on an official form. In the space for principal cause of death the coroner wrote "accident—eating canned meat—enteritis with an acute nephritis" (enteritis being an inflammation of the intestines, and nephritis a disease of the kidneys); and in the space for contributory causes he wrote "nephritis, ptomaine poisoning". The death certificate, if admissible, was important to the plaintiff's case. Without it he had scarcely enough evidence to go to the jury. By Ohio law there is a state system of registration of births and deaths, for which official forms are provided. Ohio Code, sections 197–234. The death certificate is to include the item of cause of death, to be signed by the physician last in attendance, and in unusual cases the coroner is to hold an inquest and report the result; and it is provided that death certificates are to be prima facie evidence of the facts therein stated. In the present case the coroner performed an autopsy on the body and filled in the death certificate.

We are of opinion that the coroner's certificate was properly received in evidence. The trial took place in June 1938, prior to the effective date of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, so that Rule 43(a) did not govern evidence. The case being one at law, the controlling rules of evidence were those provided by United States statutes, and in

default of such statutes those applied in the courts of the state where the district court was sitting, that is to say, those applied in the New York courts. Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; Whitford v. Clark County, 119 U.S. 522, 7 S.Ct. 306, 30 L.Ed. 500; Nashua Savings Bank v. Anglo-American Co., 189 U.S. 221, 23 S.Ct. 517, 47 L.Ed. 782; see also Bucher v. Cheshire R. Co., 125 U.S. 555, 583, 8 S.Ct. 974, 31 L.Ed. 795; By Act of June 20, 1936, 28 U.S.C. § 695, 28 U.S.C.A. § 695, Congress provided that a record made in regular course of business should be admissible in evidence, "business" including profession, occupation and calling of every kind. Manifestly, a death certificate made by a coroner in the course of his official duty under the laws of Ohio already referred to is a record made in regular course of business within the meaning of the Act. A further basis of admissibility was that the coroner's certificate, as a certificate required to be made and filed by a public officer touching an act done by him in course of official duty, would be proper evidence in the New York courts. New York Civil Practice Act, section 367; Scott v. Empire State Degree of Honor, 204 App.Div. 530, 198 N.Y.S. 535. See also Wigmore on Evidence, section 1671. The evidence tending to impeach the coroner's certificate, and there was plenty of such evidence, went to the weight to be given to the certificate, not to its admissibility. The judge took pains to point out to the jury that the coroner's findings were not conclusive.

■ Two witnesses were permitted, over the defendant's objection, to testify that the deceased told them that he had eaten corned beef and had been made ill by it. While the declarations testified to were plainly of a hearsay character, the judge took the view that they were "part of the res gestae" and so within the exception recognized for spontaneous exclamations made after sudden shock and before time for reflection and contrivance. Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 19 L.Ed. 437; Jack v. Mutual Reserve Fund Life Ass'n, 5 Cir., 113 F. 49; Wigmore on Evidence, section 1750. The New York Rule of evidence was controlling, however, and it is quite evident that the New York courts have confined the exception to narrow limits and have shown no disposition to leave the matter to the discretion of the trial judge. Waldele v. New York Central R. Co., 95 N.Y. 274, 47 Am.Rep. 41; Greener v. General Electric Co., 209 N.Y. 135, 102 N.E. 527, 46 L.R.A.,N.S., 975; Ingersoll v. Liberty Bank, 278 N.Y. 1, 14 N. E.2d 828. But we are not required to say whether the evidence was independently admissible. At an earlier point in the trial the defendant, as part of the cross-examination of one Ickes, had put in evidence a written narrative made by her before trial. Included in the narrative read to the jury was a statement to the effect that the deceased had told her that he thought that he had been poisoned by corned beef he had eaten for supper. Having itself thus put the deceased's declaration before the jury, the defendant had no ground to complain when the judge permitted the plaintiff to introduce evidence of the same declaration or of a similar declaration. Bischoff v. New York Elevated R. Co., 138 N.Y. 257, 33 N.E. 1073. Under the circumstances the proof offered by the plaintiff was merely cumulative, and its admissibility was within the judge's discretion.

There are other alleged errors in reception of evidence. We have considered them and are satisfied that the rulings of the experienced judge who presided at the trial were correct. The proof was such that the judge was required to submit the issue as to the cause of death to the jury; the charge was correct in law and was fair to both parties; the rulings on evidence were sound. Finding no error, we affirm the judgment.