242 S.W.2d 285 (1951)
HUGHES PROVISION CO. et al.
v.
LA MEAR POULTRY & EGG CO., Inc.
No. 28232.
St. Louis Court of Appeals, Missouri.
September 11, 1951.
Rehearing Denied October 12, 1951.
*286 Sievers & Reagan, St. Louis, Joseph N. Hassett, St. Louis, for appellants.
Shifrin & Shifrin and Louis Shifrin, all of St. Louis, for respondent.
ANDERSON, Presiding Judge.
This is an appeal by the plaintiffs, Hughes Provision Company, a corporation, and The Ocean Accident and Guarantee Corporation, Limited, a corporation, from a judgment of dismissal entered by the court after it had sustained a general demurrer to the plaintiffs' petition.
The petition alleged that plaintiff Hughes Provision Company was a corporation engaged *287 in the business of operating a market for the sale of foodstuffs in Youngstown, Ohio, and that defendant, La Mear Poultry and Egg Company, Inc., was a corporation engaged in the business of selling poultry, eggs, and other products, including dressed rabbits.
It was further alleged that on or about November 28, 1938, "defendant sold to one of the operators of a stall in the store of plaintiff Hughes Provision Company a shipment of dressed rabbits * * * and that plaintiff Hughes Provision Company advertised for sale and caused some of said rabbits to be sold to a customer in its store on or about the 29th day of November, 1938, and that said rabbits were adulterated, poisoned, putrefied and diseased, and were unfit for human handling and consumption, and that said customer's wife contracted the disease of tularemia as a result of handling and preparing said adulterated, poisoned, putrefied and diseased rabbits, and preparing same for cooking, and as a direct result thereof she became sick and was seriously injured and damaged from the effects of said disease."
It was further alleged that the purchaser of said rabbits, Nicola Rubbo, and his wife, Susie Rubbo, made claim for damages against said plaintiff Hughes Provision Company on account of their injuries which resulted from the said illness of said Susie Rubbo, and instituted separate actions to recover damages therefor; that Susie Rubbo recovered a judgment in her action and collected thereon from plaintiffs the sum of $2,105; that the suit of Nicola Rubbo was settled and compromised for the sum of $900; and that plaintiffs expended in the defense of said suits the sum of $1,805.33.
It further appears from the allegations of the petition that a policy of liability insurance issued by the plaintiff Ocean Accident and Guarantee Corporation was held by plaintiff Hughes Provision Company and that said insurance company, pursuant to the terms of said policy, took over the defense of said suits.
It was further alleged that plaintiffs notified defendant of said claims and suits, and demanded that defendant take over the defense of same and pay whatever damage that might result therefrom, but that defendant failed to comply with said demand.
It was further alleged that defendant shipped said diseased rabbits from Missouri and delivered same to one of the operators in the store of plaintiff Hughes Provision Company in the State of Ohio, and as a "direct result of said rabbits being poisoned, putrefied, diseased and unwholesome, and unfit for human handling and consumption, plaintiffs have been damaged in the sum of $4,810.33." The petition prayed judgment for said amount, together with costs.
Appellants assign as error the action of the trial court in sustaining the demurrer to the petition, and in dismissing the action. In support of this assignment it is urged by appellants that their petition stated a cause of action under the Ohio law.
The first question to be determined is whether the petition contains allegations which show that the law of Ohio must be applied. If there are such allegations it then becomes our duty to take judicial notice of the statutes and judicial decisions of that state. R.S.Mo.1949, sections 490.080 and 509.220; Rule 3.14, Supreme Court Rules.
The petition alleges that the defendant sold the rabbits in question to the operator of one of the stalls in the store of plaintiff Hughes Provision Company; that said rabbits were shipped by defendant from the State of Missouri and delivered by defendant to the said buyer in the State of Ohio; that said rabbits were poisoned, putrefied, diseased and unwholesome; that plaintiff Hughes Provision Company advertised the rabbits for sale and caused some of them to be sold to Nicola Rubbo, a customer in its store, and that Susie Rubbo, wife of Nicola Rubbo, contracted tularemia as a result of handling said rabbits while preparing same for cooking.
From the foregoing allegations it is clear that if there was any wrong committed by the defendant it was perpetrated in the State of Ohio, and that the rights of the parties should be governed by the Ohio law.
*288 The rule applicable is set out in the case of Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 971, 133 A.L.R. 255. In that case one Dean purchased a can of corned beef at a grocery store in Massillon, Ohio. Said beef was unwholesome and Dean died as a result of eating it. The grocer had purchased the can of beef from a wholesale house in Cleveland, Ohio, which, in turn, had bought it from defendant, a distributor located in New York. The court held that the law of Ohio governed. The court said: "It is commonly recognized that the law of the place of wrong governs the right of action for wrongful death, no matter where suit is brought. Northern Pacific R. Co. v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 950; Slater v. Mexican Nat. R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900; Vancouver S. S. Co. v. Rice, 288 U.S. 445, 53 S.Ct. 420, 77 L.Ed. 885. It is the same with torts generally. American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; Cuba R. Co. v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, 38 L.R.A., N.S., 40. Cases where the defendant's conduct occurs in one state and the injury is done in another bring in difficulties. See Cook, Tort Liability and Conflict of Laws, 35 Col.L.Rev. 202. In such cases the place of the wrong, the `locus delicti', is taken by courts in this country to be the state where the last event necessary to make the actor liable occurs. Restatement of Conflict of Laws, section 377 and note; Goodrich on Conflict of Laws (2d Ed.), section 90. In the present instance that place was in Ohio, where the deceased ate the food, took sick and died, and it is not necessary to go into finer distinctions between the place of injury and the place of death. The fact that the defendant's conduct occurred in New York does not oust the law of Ohio. It sent the food into Ohio, where the harm was done. The case is like that of shooting a firearm across the state line, starting a fire which passes the line, or owning a vicious animal which strays over the line. Keeler v. Fred T. Ley & Co., 1 Cir., 49 F.2d 872; Moore v. Pywell, 29 App.D.C. 312, 9 L.R.A., N.S., 1078; Otey v. Midland [Valley] R. Co., 108 Kan. 755, 197 P. 203; LeForest v. Tolman, 117 Mass. 109, 19 Am.Rep. 400; Connecticut Valley Lumber Co. v. Maine R. Co., 78 N.H. 553, 103 A. 263; Dallas v. Whitney, 118 W.Va. 106, 188 S.E. 766. See also Beale on Conflict of Laws, section 377.2; Developments in Conflict of Laws, 50 Harv.L.Rev. 1168. By settled rules of conflict of laws, the defendant's liability is measured by the domestic law of Ohio, to the same extent as if it had been present and had made the sale there. See Scheer v. Rockne Motors Corporation, 2 Cir., 68 F.2d 942, 944."
Section 12760 of the Ohio General Code provides: "Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both."
The Supreme Court of Ohio has held that the violation of the foregoing statute is negligence per se, and, where such act of negligence by a defendant is the direct and proximate cause of an injury not directly contributed to by the injured person, defendant is liable in damages to said injured person. Rubbo v. Hughes Provision Company, 138 Ohio St. 178, 34 N.E.2d 202; Leonardi v. A. Habermann Provision Co., 143 Ohio St. 623, 56 N.E.2d 232; Wolfe v. Great Atlantic & Pacific Tea Co., 143 Ohio St. 643, 56 N.E.2d 230; Great Atlantic & Pacific Tea Co. v. Hughes, 131 Ohio St. 501, 3 N.E.2d 415; Drock v. Great Atlantic & Pacific Tea Co., 61 Ohio App. 291, 22 N.E.2d 547; Portage Markets Co. v. George, 111 Ohio St. 775, 146 N.E. 283, 285.
It was under the foregoing statute, Section 12760 of the Ohio General Code, that plaintiff Hughes Provision Company was held liable to Mrs. Rubbo. Her action was predicated on negligence and not on any theory of breach of implied warranty of fitness. Rubbo v. Hughes Provision Co., 138 Ohio St. 178, 34 N.E.2d 202.
The Ohio Supreme Court has held that under the foregoing statute the retailer and wholesaler may both be held *289 liable to the person injured. Canton Provision Co. v. Gauder, 130 Ohio St. 43, 196 N.E. 634; Kniess v. Armour & Co., 134 Ohio St. 432, 17 N.E.2d 734, 119 A.L.R. 1348; Drock v. Great Atlantic & Pacific Tea Co., 61 Ohio App. 291, 22 N.E.2d 547; and that contractural relationship between the producer and the injured person is not an essential element of liability. Canton Provision Co. v. Gauder, 130 Ohio St. 43, 196 N.E. 634.
It is also held by the Ohio Supreme Court that where a manufacturer or producer puts into commerce diseased, corrupted, adulterated or unwholesome food, his liability is primary and that of the retailer is secondary, and that a right of action for indemnity exists in favor of the latter against the former. Kniess v. Armour & Co. et al., 134 Ohio St. 432, 17 N.E.2d 734; Canton Provision Co. v. Gauder, 130 Ohio St. 43, 196 N.E. 634. In such a case the primary or active fault rests upon the manufacturer or producer. It is he, who, possessing a knowledge of the source of supply, is best able to protect the market from unwholesome food. For that reason his negligent acts are different in kind and character from that of the immediate seller, and constitute a breach of duty which he owes to the seller as well as the consumer.
Under the Ohio law, as elsewhere generally, a party secondarily liable in a tort action is entitled to indemnity from one primarily liable. Fidelity & Casualty Co. of New York v. Federal Express, Inc., 6 Cir., 136 F.2d 35; Herron v. City of Youngstown, 136 Ohio St. 190, 24 N.E.2d 708; Wery v. Seff, 136 Ohio St. 307, 25 N.E.2d 692. The duty to indemnify in such cases arises by operation of law, independent of contract. It rests on the principle that the original act of delivering the article is wrongful and that such a tortfeasor is responsible for the natural consequences of his wrongful act. Oceanic Steam Nav. Co. Ltd. v. Compania Transatlantic Espanola, 134 N.Y. 461, 31 N.E. 987; 31 C.J., section 47, page 447; 42 C.J.S., Indemnity, § 21; Restatement of the Law of Restitution, section 96, page 418.
In the petition in the case at bar plaintiffs sought to enforce the primary liability of the defendant. It is our opinion that the petition stated facts sufficient to constitute such a cause of action under the Ohio law. The judgment is reversed and the cause remanded.
McCULLEN and BENNICK, JJ., concur.