Larry D. WOLF, Respondent,

v.

MISSOURI STATE TRAINING SCHOOL FOR BOYS, Appellant.

No. 58738.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1974.

Rehearing Denied in Per Curiam
Jan. 13, 1975.

Robert C. Smith, Dale C. Doerhoff, Smith, Lewis & Rogers, Columbia, for respondent.

John C. Danforth, Atty. Gen., Kenneth M. Romines, Asst. Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for appellant.

FINCH, Judge.

The ultimate issue for determination on this appeal is whether the action of the Personnel Advisory Board[1] in upholding dismissal of respondent Wolf as a Corrections Officer I at the Missouri State Training School for Boys at Boonville, Missouri is to be sustained. Resolution of this question turns on whether respondent was given the notice of dismissal required by § 36.380[2] which, after authorizing dismissal for cause of merit system employees, provides in part as follows:

> "No dismissal of a regular employee shall take effect unless, prior to the effective date thereof, the appointing authority gives to such employee a written statement setting forth in substance the reason therefor and files a copy of such statement with the director."

Respondent was employed on September 3, 1969 at the Training School as a provisional Corrections Officer I. He served in

---

1. Created by § 36.050 RSMo 1969 (amended by Laws 1971, p. 118, S.B. No. 327, § 1) within the Personnel Division.

2. All statutory references are to RSMo 1969, V.A.M.S., unless indicated otherwise.

that capacity until October 1, 1970, when he was given an appointment as a regular Corrections Officer I. He continued in that position until Walter DeClue, then superintendent of the Training School, advised by letter dated June 11, 1971, that his employment would be terminated at the close of business on June 17, 1971. In that letter Mr. DeClue detailed several occurrences wherein respondent allegedly did or failed to do certain things which were assigned as the basis of the decision to dismiss him. One of the charges involved certain events which occurred on June 5, 1971. All of the others had occurred during the period when respondent was acting as a provisional employee and before his appointment as a regular Corrections Officer on October 1, 1970.

Pursuant to § 36.390, respondent appealed his dismissal to the Personnel Advisory Board, contending that he had not been given a notice of dismissal in compliance with § 36.380.[3] At the evidentiary hearing conducted by the Board, Mr. DeClue's secretary testified that she typed the letter of dismissal on June 11, 1971, that she placed it in an envelope addressed to Larry Wolf at his home address in Boonville, and that she deposited the letter in the U. S. post office in Boonville sometime between 5:15 and 5:30 p. m. on that date. In response, Wolf testified that on June 12, 1971, he went to Hot Springs, Arkansas on vacation and did not see the dismissal letter until he returned to Boonville on June 21, 1971, and found it at his home. The letter apparently had been opened by his mother. With the letter was an envelope postmarked June 18, 1971.

The Personnel Board handed down a decision sustaining the discharge. It made findings of fact and conclusions of law in which it found that the appointing authori-

ty mailed to respondent at his address in Boonville, Missouri a written statement dated June 11, 1971, which set forth the basis for his dismissal, that said letter was placed in the U. S. post office in Boonville, Missouri before 6 p. m. on June 11, 1971, that a letter so mailed to an addressee in Boonville would, in the normal course of the mail, be delivered to the addressee on the following day, and that such notification complied with the requirements of § 36.380. It also found and concluded that by reason of various acts of commission or omission by respondent which were specifically enumerated in the findings and conclusions, respondent was properly dismissed for cause.

Pursuant to provisions of the Administrative Procedure and Review Act, Chapter 536, respondent appealed to the Circuit Court of Cooper County, Missouri. That court, in reviewing the decision of the Personnel Board, held that there had not been compliance with § 36.380 with reference to notice of dismissal to respondent. Reasons assigned were that there was no evidence that postage was affixed to the letter and that the state was not entitled to a presumption of delivery before June 17, 1971. The court further concluded that in view of its findings with reference to the insufficiency of notice of discharge, it need not reach and pass upon the issue as to whether the evidence disclosed sufficient justification for discharging respondent. On the basis of these findings, the court ruled that the decision of the Personnel Board should be reversed and the case remanded with directions that respondent be reinstated retroactively to June 18, 1971, with full pay and allowances.

Thereupon, appellant took an appeal to the Missouri Court of Appeals, Kansas City District, which affirmed. On applica-

3. He also contended (1) that the matters which occurred during his probationary employment did not provide a basis for discharge from his job as a regular Corrections Officer to which he subsequently was appointed and (2) that his conduct on June 5, 1971, of which the superintendent complained, was proper and not a basis for discharging him as a corrections officer. In view of our conclusion, hereinafter explained, that respondent was not effectively discharged because he was not given notice of dismissal as required by § 36.-380, we do not reach or consider these other contentions of respondent.

tion of appellant, we ordered the case transferred to this court pursuant to Art. V, § 10, Mo.Const., V.A.M.S., and we now decide the case as though here on direct appeal.

■■■ Did appellant give respondent a sufficient and timely notice of dismissal? Under the provisions of § 36.380 previously quoted, dismissal shall not take effect unless prior to the effective date thereof, the appointing authority "gives" to the employee a written notice reciting the reason for the discharge. What is meant by the word "gives"? Chapter 36 contains no definition, explanation or direction. However, § 1.190 provides as follows:

> "Whenever any of the statutes of this state require or imply that a notice shall be given to any person concerning or affecting any right, property, claim, duty, matter or thing of any character or nature, unless the statutes expressly direct a different method of service, the delivery of a true copy of the notice to the person intended to be notified, or the leaving of a copy at his usual place of abode with some member of his family over the age of fifteen years, constitutes a valid and sufficient service of the notice."

The foregoing statutory provision has been construed to mean that the method of service therein specified is mandatory and exclusive. For example, in Quinn v. Graham, 428 S.W.2d 178 (Mo.App.1968), the court considered whether the required statutory notice of claims against a city of the third class had been given. Sec. 77.600 provided that no action for personal injury could be taken against such a city unless within 90 days of the occurrence written notice thereof had "been given" to the mayor. In construing that language, the court said l.c. 182:

> *"Was there compliance with the statutory requirement the 'notice shall first have been given in writing to the may-*

or'? It is stated in V.A.M.S. § 1.190 that 'Whenever any of the statutes of this state require or imply that a notice shall be given to any person concerning or affecting any right, property, claim, duty, matter or thing of any character or nature, unless the statutes expressly direct a different method of service, the delivery of a true copy of the notice to the person intended to be notified, or the leaving of a copy at his usual place of abode with some member of his family over the age of fifteen years, constitutes a valid and sufficient service of the notice.' V.A.M.S. § 77.600, supra, simply provides the notice is to be 'given * * * to the mayor,' and does not expressly or impliedly 'direct a different method of service,' and 'as the manner of service is not prescribed, personal service is required.' Peterson v. Kansas City, 324 Mo. 454, 458(1), 23 S.W.2d 1045, 1047(1)."

In James v. Hutchinson, 211 S.W.2d 507 (Mo.App.1948), the court ruled on the sufficiency of a notice to vacate premises given under a written lease. The notice which had been mailed to the occupant of the premises was held to be sufficient. However, in so holding, the court distinguished the situation from one in which a statutory notice is required, saying l.c. 509:

> "We think plaintiff is wrong in this contention. The question here is simply one of complying with the provision of a private contract requiring the giving of written notice. It is not a case of complying with some statute of this state requiring or implying the giving of notice. There is no doubt that where a statutory notice is involved, personal service is required unless the statute expressly directs a different method of service. Sec. 1437, R.S.Mo 1939, Mo.R.S.A. § 1437."[4]

In State ex rel. Davidson v. Caldwell, 310 Mo. 397, 276 S.W. 631 (1925), this court, without specifically referring to

4. Sec. 14.37 RSMo 1937 was the predecessor of Sec. 1.190 RSMo 1969.

what is now § 1.190, discussed what is required when a statute provides that notice shall be given but does not spell out the manner in which notice is to be delivered. In that connection the court said l.c. 634:

"Notice in compliance with these statutes means personal service. When a statute requires notice without prescribing the method, personal service is meant."

We find no Missouri cases holding to the contrary and none are cited by appellant. It does refer to Merritt v. State Hospital No. 1, Fulton, 403 S.W.2d 940 (Mo.App.1966), in which it appears from the recital of facts that the notice of dismissal was mailed to the employee. However, no issue as to the sufficiency of that notice or whether it satisfied the requirements of § 36.380 was raised and the court did not discuss the question. Hence, that case is not authority for the proposition that mailing of such a notice complies with the statute.

Under the foregoing cases, it is clear that § 1.190 is applicable and governs the method of service of the notice of discharge provided for in § 36.380. Sec. 1.190 requires that the notice of dismissal be served either by delivery to the employee personally or by leaving it at his usual place of abode with some member of his family over fifteen years of age. Neither was done. Accordingly, we hold that the notice required by § 36.380 was not given and that the discharge of respondent did not take effect.

■ In so holding we do not violate the provisions of § 536.140 which prescribe and limit the scope of judicial review under the Administrative Procedure and Review Act. This is true because it is clear that decisions of an administrative body on questions of law are not binding upon reviewing courts. Crawford v. Industrial Commission, 482 S.W.2d 739 (Mo.App. 1972). The decision of the Personnel Advisory Board as to whether service by mail

of the dismissal notice complied with the requirements of § 36.380 was a question of law, not of fact.

Appellant states that the practice has been to give notice of dismissal to merit system employees by mailing the notice to the employee's regular address and that it would seriously inconvenience operations if service pursuant to the provisions of § 1.-190 is required. If this be true, it is a matter to be addressed to the General Assembly, not the courts. If such a request is made and the legislature is inclined to amend the merit system law to provide for notice by mail in cases of discharge, it can specify therein not only when the notice is to be given but also whether it is to be by registered, certified or ordinary mail.

It follows from what we have said that the decision of the Personnel Advisory Board upholding the discharge of respondent on the basis of a mailed notice of dismissal cannot stand.

Having so concluded, we proceed to determine what should be ordered with respect to the terms of reinstatement. Sec. 36.390(5)(1) establishes the relief to be given by the Board in the event the dismissal of an employee is not sustained. It provides that the employee shall be ordered reinstated to his former position and that payment to the employee "of such salary as he has lost by reason of such dismissal" shall be ordered. Respondent contends that the Personnel Board should be directed to allow full pay and allowances retroactive to June 18, 1971, without any offsets or credits of any kind. This is what the order of the trial court directed. Appellant contends that the Board should conduct a hearing with reference to earnings of respondent subsequent to June 17, 1971, and should offset against the amount due respondent whatever he has earned from other employment between June 17, 1971, and the time of reinstatement.

■ There is a well established principle of law known as the rule of avoidable

consequences which requires that one damaged by breach of contract make reasonable efforts to minimize the resulting damages. 22 Am.Jur.2d Damages § 33; Annot., 150 A.L.R. 100. Most courts apply this rule to employment relationships, permitting the employer to reduce damages recoverable by a wrongfully discharged employee by whatever the employee has earned or by reasonable diligence could have · earned during the period of his wrongful discharge. 56 C.J.S. Master and Servant, § 59; Annot., 100 A.L.R. 100, 101.

██ The issue with which we are confronted is whether this principle is applicable to merit system employees such as respondent. The question of whether and when the rule of avoidable consequences is applicable to persons in government service is the subject of an annotation in 150 A.L.R. 100, which states the rules thus, 1.c. 102:

"The general rules forming the basis for decision of the question whether the earnings of a public servant in another employment, or the amount he could have earned in such employment, during the time he was wrongfully excluded from his position (office or employment) can be deducted from the salary he is entitled to for such period, is, as far as legal theory goes, a very simple one. The real difficulty lies, as is so frequently the case, in the application of the rule in the particular case.

"The general rules are:

"(1) A public officer who is prevented, without any fault on his part, from performing the duties of his office, and while so excluded, earns wages in another employment, or could have earned such wages, may recover his full salary for the period of his wrongful exclusion from office without crediting thereon by way of mitigation of damages his earnings during such period.

"(2) The well-settled rule applicable to private employment, namely, that the employer is entitled under the theory of avoidance of damages to a credit of the amount earned by the wrongfully discharged employee, or of the amount which could have been earned by him, in another employment during the term of the employment from which he has been wrongfully discharged or suspended, has equal application in a case where a public employee is prevented, without his own fault, from performing the duties of his employment, and, while so excluded, earns wages, or has an opportunity to do so, in another employment.

"(3) Civil service employees (sometimes called quasi officers), who occupy a position in between public officers and public employees whose relationship is entirely based on contract, by reason of the fact that their tenure is made stable by the civil service laws and can be ended only under certain prescribed conditions, are not considered to occupy a position analogous to that of public officers in respect to the question of mitigation of damages simply because of their status as civil service employees. Although their relation to the government is not entirely contractual in nature, they are held to be in the same class as public employees, and if wrongfully discharged, to come under the same rule in regard to avoiding damages." [5]

---

5. The annotation explains that the reason for not applying the rule to public officers is that the office is not one created by contract in the usual sense and that the salary inheres in the office and belongs to the officer by virtue of his right to that office rather than by contract. The situation is different in the usual private employment wherein the relationship is based on contract. The rule of avoidable consequences is applicable in such situations. As noted in paragraphs (2) and (3) of the quotation, the rule is usually applied to public employees as well, and this includes civil service or merit system employees. They are not public officers. Their relationship is essentially one of contract. Civil service employees simply have more safeguards built in to protect their tenure in that relationship. The A.L.R. annotation, 1. c. 114, states it thus:
"In spite of the extra contractual elements in the relation between a public employee

Respondent argues that under the law of Missouri the rule of avoidable consequences does not apply to merit system employees such as respondent. In support of that position, he cites and relies upon the case of Wessler v. City of St. Louis, 242 S.W.2d 289 (Mo.App.1951), wherein plaintiffs who were civil service employees sought recovery of back pay for the period of time during which they were separated from city service due to shortage of funds. It was determined that they were improperly separated and the city was directed to reinstate them with compensation for the period during which they were deprived of their positions. The city contended that it was entitled to deductions therefrom for amounts earned by the employees on other jobs during the period in question. The St. Louis Court of Appeals in deciding this question held that although plaintiffs were not public officers, they occupied a status under the provisions of the charter of the City of St. Louis which entitled them to the same protection as public officers. On that basis the court held that the rule of avoidable consequences did not apply to plaintiffs therein. Consequently, the court ruled that the city could not offset earnings from other employment while plaintiffs were wrongfully excluded from office. However, in so holding, the court not only recognized that the rule does apply to other public employees (school teachers were specifically given as an example) but it also recognized that most courts have applied the rule to civil service employees, saying 1.c. 292:

"We are well aware that the courts, in disposing of cases involving the question now at issue, have by and large refused to treat the status of civil service employees as analogous to that of public officers, and have held instead that the duty to minimize damages, which is incumbent upon employees generally, is

who holds his position under the civil service law, and the government, the courts have constantly refused to consider their status as analogous to that of public officers and have held that the rule of mitigation of

equally applicable to civil service employees. 150 A.L.R. 113. However, those decisions, while undoubtedly correct on their own facts, are not persuasive in dealing with a situation arising under a charter such as that of defendant city, which expressly wipes out any distinction between officers and employees as to positions affected by its provisions."

The propriety of the distinction made in Wessler on the basis of the language in the St. Louis charter is not before us and we express no opinion therein. In any event, we find nothing in Chapter 36, the State Merit System Act, which makes merit system employees public officers or their equivalent or which provides a basis for us to decline to apply to them the same rule of avoidable consequences applicable to other public employees in Missouri. The language of § 36.390(5)(1) in providing for payment of salary lost indicates only the purpose of making the wrongfully discharged employee whole. It does not evidence an intention to provide a windfall whereby the employee receives his full salary for time off the job plus whatever he earned during that period from other employment.

In our view, the majority rule, which treats civil service employees the same as other public employees with respect to minimizing damages, is the better reasoned rule. In the absence of constitutional, charter, or statutory provisions which unmistakably dictate a contrary result, it is the one we should adopt. Accordingly, we decline to apply the rule of Wessler v. City of St. Louis, supra, to state merit system employees like respondent. We hold that the rule of avoidable consequences does apply to respondent and that appellant is entitled to have offset against compensation determined to be due respondent those

damages which applies to employees is equally applicable in the case of 'quasi officers'."
In this connection see also 15 Am.Jur.2d, Civil Service § 51.

sums which respondent has earned or could have earned during the period he has been deprived of his employment as a corrections officer. Such sums can and should be determined by the Personnel Board by conducting an evidentiary hearing thereon.

Accordingly, the judgment of the circuit court is reversed and remanded with directions to the circuit court to enter a judgment reversing the Personnel Board's decision herein, ordering Wolf's reinstatement retroactive to June 18, 1971, and directing the Board to conduct a hearing to determine compensation due respondent as well as those amounts which are to be credited as offsets under the views expressed in this opinion.

DONNELLY, C. J., and MORGAN, HOLMAN, and HENLEY, JJ., concur.

SEILER, J., concurs in separate concurring opinion filed.

BARDGETT, J., concurs in part and dissents in part in separate opinion ·filed.

SEILER, Judge (concurring).

At first glance the principal opinion seems to remove the teeth from the appeal procedure established under the merit system, because its practical effect is that the state can discharge employees without the risk that should the discharge prove wrongful the state might have to pay a substantial sum in back salary, a possibility which heretofore has been a strong deterrent to wrongful discharge. I would not want to participate in such a dismantling of the merit system. However, I note that the last paragraph of the opinion refers to the language of Sec. 36.390(5)(1) as indicating the legislative purpose "of making the wrongfully discharged employee whole." In order to accomplish this goal, it is equitable and should stand as a counter obligation on the part of the state that in determining the compensation due the employee consideration be given to the fees and expenses incurred by the employee in obtaining vindication of his position. This, in my opinion, is a concomitant of the avoidable consequences obligation to which the employee is held and is a legislatively intended sanction vital to the mandate that a merit system employee is not to be discharged except for cause, Sec. 36.390(5).

Support is found for this position in another jurisdiction which has considered the question. For example, the New Jersey merit system statute is similar to ours, and provides that the civil service commission (similar to our personnel advisory board) shall conduct hearings on appeals from discharges. One of the alternatives available under the New Jersey statute, if the finding is favorable to the employee, is restoration of "his position without loss of pay." N.J.S.A. 11:15–6. Under this provision the New Jersey court has held that " . . . it would be equitable that consideration be given to the fees and expenses necessarily incurred by the appellants in obtaining vindication . . . ", Mastrobattista v. Essex County Park Comm., 46 N.J. 138, 215 A.2d 345, 351 (1965). "The power possessed by the Commission under the second paragraph of R.S. 11:15–6, N.J.S.A. to award back pay less what was earned in outside employment during the period of illegal dismissal also serves as authority for increasing the net salary award by any sum that will reasonably compensate the vindicated employee for expenses necessarily related to and incurred in the advancement of his cause . . . ", Mason v. Civil Service Commission, 51 N.J. 115, 238 A.2d 161, 168 (1968).

In my opinion, the Personnel Advisory Commission should be directed to do the same here.

In the case before us, there has been one evidentiary hearing before the Personnel Advisory Board and three court hearings —one each in the circuit court, the court of appeals and the supreme court, these proceedings spanning over three years thus

far. The legal services for the particular agency from which the employee was discharged (here the Missouri State Training School for Boys) are provided by the state, and the State Training School can carry the case as far as it desires without concern as to fees or expenses. Here, for example, both the appeals to the court of appeals and to this court were by the State Training School. But the employee must provide his own counsel fees and litigation expense and, speaking realistically, could not possibly have proceeded in this matter without a lawyer. His necessary legal fees and expenses are bound to be substantial. Unless these are to be considered, reinstatement will prove to be an empty and expensive victory for the employee, and the same will be true for others who may hereafter be wrongfully discharged.

Merit system employees, the same as everyone else, must have income to live and support their families. Generally speaking, their salaries are not large to begin with. Necessarily, any discharged employee must soon find work elsewhere while his appeal is working its way through the system, or suffer hardship. The discharged employee cannot afford to forego employment elsewhere and will go to work as soon as he can, so that the offsets or credits earned in other work will largely cancel out what his pay would have been had he not been discharged.

The result, then, is that unless fees and expenses are considered in determining what will make the vindicated employee whole, no one except a wealthy merit system employee will ever be able to afford to contest his discharge. If fees and expenses are not allowed, the value of the right of appeal is emasculated and supervisors and superintendents can discharge merit system employees with no likelihood, as a practical matter, that their discharges will ever be challenged, because to do so successfully will cost the employee far more than any back pay allowed.

BARDGETT, Presiding Judge (concurring in part and dissenting in part).

I concur in the holding of the principal opinion reversing the decision of the Personnel Advisory Board and ordering that the matter be remanded to that board for the purpose of determining the compensation due respondent but dissent from the views expressed in the principal opinion that the State is entitled to any offsets against the salary respondent lost by reason of this illegal discharge.

Sec. 36.390(5)(1) which establishes the relief to be given the employee in the event the discharge is not sustained states he is entitled to "such salary as has been lost by reason of such dismissal." There are no deductions provided for in the statute. If the legislature had intended for there to be deductions for pay earned or which could have been earned elsewhere they would have said so.

The concurring opinion of Seiler, J., demonstrates how the very purpose of the merit system can be frustrated when the deductions authorized by the principal opinion are made and the employee must also stand the expense of attorney's fees and expenses attending the processing of his claim over a long period of time. It seems to me that, under the principal opinion, what the law gives to the employee, the procedure takes away.

In my opinion, Wessler v. City of St. Louis, 242 S.W.2d 289 (Mo.App.1951), is very close to the instant case on the facts. Both cases basically involve governmental employees who are afforded a degree of job protection by the government employing them through the Civil Service provision of the St. Louis Charter and by the Merit System laws of Missouri. The principal opinion refers the appellant Missouri State Training School for Boys to the legislature if it desires a change in the statutory notice provision. I believe the same reference should be made if appellant believes the statutory law of this State ought

to allow for the deductions that appellant seeks on this appeal.

If the employee is permitted to recover his full salary loss, then he can pay his own attorney's fees and expenses. I believe that if the statute is followed as written, the claims for loss of pay due to wrongful discharge under the Merit System will be expeditiously processed and this is to the benefit of both the employee' and the State. Furthermore, the potential liability for full salary lost, as the statute provides, will motivate the state agency involved and the Personnel Advisory Board to closely adhere to the law. In any event, the statute does not provide for deductions and therefore I do not believe they are allowable.

I would follow Wessler v. City of St. Louis, supra, and hold that the statute does not allow for the application of the general rule of avoidable consequence and that respondent is entitled to an award of lost salary in full.

### ON MOTION FOR REHEARING

### PER CURIAM.

In a motion seeking modification of our opinion (or in the alternative a rehearing) respondent requests the court to rule on the question of whether he should be given credit for attorney's fees and expenses in the determination of the sum to be deducted in mitigation of back pay under the rule of avoidable consequences. His motion states that he has employed counsel and will claim a credit for attorney's fees and expenses in the hearing to be held by the Personnel Advisory Board for the purpose of determining the net amount of compensation due respondent. He points out that if the issue of whether he is entitled to such credit is not settled in this opinion, a new series of appeals likely would result from whatever action is taken by the Personnel Advisory Board with reference to such claimed credits.

This issue was not considered or resolved in the foregoing opinion as it was neither briefed or argued by the parties. At the time this case was submitted, respondent opposed completely the idea that the rule of avoidable consequences should be applied. However, the application of that rule now having been settled, it appears certain that the issue on the deductibility of attorney's fees and expenses will arise when the hearing is held before the Personnel Advisory Board. Under those circumstances, we have concluded that it is better for us to resolve the issue now instead of postponing it for consideration in subsequent appeals.

This question has been considered on three occasions by the Supreme Court of New Jersey. In addition to the cases referred to in Judge Seiler's concurring opinion, the court expressly resolved the question in the case of Perrella v. Board of Education, 51 N.J. 323, 240 A.2d 417, 428 (1968) wherein the court said:

> "In *Mastrobattista* [Mastrobattista v. Essex County Park Comm'n, 46 N.J. 138, 215 A.2d 345] it was held that when a public employee with tenure was improperly dismissed, he was entitled to recover his lost back pay less his earnings in outside employment between the date of dismissal and date of restoration to his position. We recognized, however, that such an employee might well have been obliged to incur expenses and attorney's fees in order to vindicate his right to the position. In this event, whenever his back-pay award was to be mitigated by his outside earnings, it seemed just and equitable to give him a credit against the sum to be applied in mitigation of the reasonable counsel fee and expenses which he had paid or obligated himself to pay in the successful prosecution of his action. Thus his interim outside earnings less such fee and expenses would represent the factor to be applied in diminution of his back-pay recovery. This is the purport of *Mastrobattista*, as well as of Mason v. Civil Service Comm'n, 51 N.J. 115, 238 A.2d 161, supra."

█ We agree with the reasoning in the foregoing quotation from Perrella. Ac-

cordingly, we hold that an improperly dismissed merit system employee is entitled in the determination of the amount by which his back-pay award is to be mitigated under the rule of avoidable consequences to have credited against such amount the counsel fee plus expenses which the employee has paid or obligated himself to pay in vindicating his right to reinstatement of his position, provided that the amount of such credit is limited to what is determined to be a reasonable fee and reasonably necessary expenses. The judgment of the circuit court should direct the Board to allow such credit in determining the sum to be deducted in mitigation of the amount of back pay which respondent shall receive.

Respondent's motion for rehearing is overruled.

DONNELLY, C. J., and SEILER, MORGAN, BARDGETT and FINCH, JJ., concur in per curiam.

HOLMAN, J., dissents to per curiam.

HENLEY, J., dubitante as to per curiam.