Joseph SIMS, Appellant,

v.

Robert J. BAER, President of the Board
of Police Commissioners of the Metro-
politan Police Department of the City
of St. Louis, et al., Respondents.

No. 52208.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 16, 1987.

Ellen F. Watkins, Clayton, for appellant.

David O. Danis, St. Louis, for respondents.

DOWD, Judge.

Sergeant Joseph Sims (hereinafter appellant), a member of the St. Louis Metropolitan Police Department, appeals from a judgment of the Circuit Court of St. Louis County affirming an administrative determination by the St. Louis Board of Police Commissioners (the Board) suspending appellant without pay for violations of Police Department Rules. We affirm.

Appellant was charged with four violations of Police Department Rule 7.011 arising from an incident occurring on May 23, 1984, in St. Louis County. At approximately 1:00 a.m. on that date, appellant was stopped for speeding and failure to drive in a single lane while driving an unmarked St. Louis City police car in North St. Louis County by St. Louis County Police Lieutenant Thomas Pierce. Two St. Louis County patrolmen, Officers Christopher Ambrose and Tom Argent responded as backup. Officer Ambrose attempted to conduct a field sobriety test on appellant but appellant refused to cooperate. Officer Ambrose described appellant as having a definite odor of intoxicant on his breath, his eyes were glossy and "pinkish," he seemed "spacey," was "wobbly on his feet," and his speech was slurred.

Appellant was placed under arrest for operating a motor vehicle in an intoxicated condition and other traffic violations including speeding at fifty m.p.h. in a thirty-five m.p.h. zone and improper lane usage. While appellant was being transported to the police station he became belligerent and began directing obscenities to the county officers.[1]

Appellant was taken from the County Police Department to the County Intake Center at City Hospital, for a blood alcohol test, by St. Louis City Police Officer Herbert Ubben. Officer Ubben also described appellant as having an odor of intoxicant on his breath. Approximately two hours after appellant had been stopped and arrested, a blood sample was taken. Appellant's blood alcohol concentration at the time of testing was .05 percent. The criminalist who performed the test estimated that based on the amount of alcohol concentration the body loses per hour, appellant's blood alcohol concentration would have been approximately .08 percent at the time appellant was stopped.

The state filed a Memorandum of Nolle Prosequi on the driving while intoxicated charge against appellant and St. Louis County dismissed its charge of driving under the influence. Appellant pled guilty and was convicted on the speeding charge.

On June 4, 1985, the Metropolitan Police Department brought charges against appellant for violations of department regulations. A hearing before the Board of Police Commissioners was held October 9, 1985. After a full hearing on the evidence, with both parties represented by counsel, the Board issued its findings of fact and conclusions of law, finding appellant guilty of three violations of Rule 7.011 as set forth in Charges I, II and IV, and suspended appellant without pay for eight days on each charge, the punishments running concurrently. A fourth violation, contained in Charge III, was dropped by the Police Department due to the absence of the complaining witness, Police Lieutenant Pierce.

Specifically, appellant was found guilty of the following violations:

I. On or about December 27, 1984, Sergeant Joseph Sims violated Rule 7.011(a) of the Police Manual ... which provides

---

1. Appellant referred to Lieutenant Pierce as a "piss-assed Lieutenant," a "fag," and a "m......

f......"

in applicable part, 'Acts contrary to good conduct shall include: conviction of a felony, misdemeanor or ordinance violation under any statute or ordinance' in that Sergeant Joseph Sims was convicted on December 27, 1984, of speeding in Division 36 of the Circuit Court of St. Louis [County].

II. On or about May 23, 1984, in St. Louis County, Missouri, Sergeant Joseph Sims violated rule 7.011 of the Police Manual ... which provides in applicable part, 'Acts contrary to good conduct shall include any conduct detrimental to the public peach [sic] or welfare' in that Sergeant Joseph Sims was operating a motor vehicle under the influence of alcohol.

IV. On or about May 23, 1984, Sergeant Joseph Sims violated Rule 7.011 of the Police Manual ... which provides in applicable part, 'Every member of the Department shall at all times maintain reasonable standards of courtesy and shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in particular' in that Sergeant Joseph Sims while in conversation with St. Louis County Police Officer C.J. Ambrose was verbally abusive, uncooperative, threatening, and directed obscenities concerning Lieutenant Pierce while in conversation with [Officer] Ambrose bringing discredit upon himself in particular and the Department in general.

Appellant filed a Petition for Review of Administrative Action in St. Louis County Circuit Court[2] alleging that the Board's determination was unsupported by substantial and competent evidence upon the whole record; was arbitrary, capricious and un-

reasonable; involved an abuse of discretion; and was void because the Police Manual Rule relied upon was unconstitutionally vague. The circuit court entered its order affirming the Board's decision to suspend appellant.

Appellant presents four issues for our review:

(1) That the trial court erred in denying appellant's application for change of judge;

(2) That the Board's order was unsupported by substantial and competent evidence upon the whole record in that the only evidence supporting the Board's determination was incompetent hearsay and appellant's evidence to the contrary was neither disputed nor impeached;

(3) That the trial court erred in not declaring void as unconstitutionally vague the Police Manual Rules used to charge appellant; and

(4) That the trial court erred in denying appellant's request for reasonable attorneys' fees.

Appellant filed the Record on Appeal with the circuit court on April 28, 1986. The cause was assigned to Circuit Judge Philip J. Sweeney. On May 5, 1986, Judge Sweeney issued a preliminary order affirming the Board's determination and dismissing appellant's Petition for Review. On May 6, appellant moved and was granted his motion to set aside the May 5 order and was allowed 30 days from the filing date of the Record on Appeal to file appellant's brief and proposed findings of fact and conclusions of law pursuant to Local Rule 71.[3]

---

2. Appellant's petition for review was properly brought in St. Louis County Circuit Court as § 536.110.3, RSMo 1986, provides that venue for judicial review of an administrative decision is appropriate in the circuit court of Cole County or in the county of plaintiff's residence.

3. Local Rule 71(2), St. Louis County Circuit Court, pertaining to administrative reviews provides:

Within thirty (30) days after the record on appeal has been filed in the Court, plaintiff or relator may file a copy of his brief and, if desired, proposed findings of fact and conclusions of law with the Court and shall deliver

or mail one copy thereof to each of opposing counsel. Within twenty (20) days thereafter, defendant or respondent may file a copy of his brief and, if desired, proposed findings of fact and conclusions of law with the Court and shall deliver or mail one copy thereof to each of opposing counsel. Within ten (10) days after defendant or respondent has filed a brief, plaintiff or relator may file a copy of a reply brief with the Court and shall deliver or mail one copy to each of opposing counsel. Service upon opposing counsel may be shown in any manner permitted by Supreme Court Rule.

On May 7, 1986, appellant applied for and was denied a request for change of judge pursuant to Rule 51.05, Missouri Rules of Court. On June 17, 1986, appellant notified the circuit court that the matter was ready for submission and requested oral argument on the issues contained in the Petition for Review and reconsideration of appellant's May 7 application for change of judge. Both requests were denied and on June 17, 1986, Judge Sweeney entered his final order affirming the Board's determination to suspend appellant for violations of the Police Manual Rules contained herein.

## I

In his first point appellant contends the circuit court erred in denying his request for change of judge pursuant to Rule 51.05, Missouri Rules of Court, under the principles set forth in the recent Western District case of *Farnsworth v. Wee,* 720 S.W.2d 409 (Mo.App.1986). We disagree.

*Farnsworth* is distinguishable from the case presented here. In *Farnsworth,* relator Garland Farnsworth appealed from the trial court's judgment which, in part, dismissed relator's petition for a writ of mandamus and quashed the court's preliminary order in mandamus. On appeal, relator made several claims of trial court error, dispositive of which was his claim that the trial court erred in failing to grant his request for change of judge.

Midway through the proceedings the relator in *Farnsworth* wrote a letter to the presiding judge of the Jackson County Circuit Court requesting that the presiding judge remove relator's case from the trial judge's "jurisdiction." Relator was dissatisfied with the manner in which his attorney and the trial court were handling the litigation and informed the presiding judge he was prepared to conduct his case pro se. The presiding judge responded with a letter to relator's attorney directing him to consult with relator concerning "filing a motion" for change of judge. On appeal, relator contested the trial court's refusal to grant him a change of judge. The Western District remanded the case holding that the trial court erred in denying relator's request based on the fact that relator did not put his request in motion form.

*Farnsworth* stands for the proposition that Rule 51.05 "does not require any specific form of the written application and it certainly does not require that a *motion* for change of judge be filed." *Id.* at 411. In *Farnsworth,* copies of the letter requesting a change of judge were mailed to the trial judge, relator's attorney, and to a third person whose relationship to the case was unascertainable from the record before the court. Because the trial court had improperly denied the request for change of judge on grounds it was not in motion form, the court remanded the case for a hearing to determine whether the request should be granted. The court noted that if at the hearing it is determined that respondent was not given notice, "the hearing itself will provide the respondents with an opportunity to question the propriety of a change of judge and thereby accomplish the purpose of notice." *Id.* at 412. The court, however, did not abrogate the notice requirement. To the contrary, the court treated notice as a prerequisite for obtaining a change of judge: "Other than *service of a copy of the request on the other party and notice,* the only prerequisite for obtaining a change of judge is a timely application for the change." *Id.* at 411 (emphasis added).

Despite *Farnsworth's* liberal construction of Rule 51.05 regarding the proper form for requests of change of judge, such construction does not obviate the need for compliance with the Rule's notice requirement. The language of the Rule clearly mandates that "a copy of the application and notice of the time when it will be presented to the court *shall be* served on all parties." Rule 51.05(c) (emphasis added). The purpose of this provision is to afford parties an adequate opportunity to contest the form, adequacy or timeliness of the request. *Matter of Buford,* 577 S.W.2d 809, 827 (Mo. banc 1979).

■ Appellant's application for change of judge was included in the record before us. The application contains neither a cer-

tificate of service nor does it provide any other indication that the Board was aware of appellant's request for change of judge.

Appellant contends that failure to serve Respondent Police Board is not fatal because Rule 51.05 provides that requests for change of judge are to be granted automatically upon timely request and that it is customary in the circuit courts of St. Louis County for an application to be presented and ruled upon all in the same act. However, timeliness is not the only prerequisite for granting a change of judge under Rule 51.05. The Rule clearly requires notice and service upon the opposing party. Inasmuch as courts are bound to follow the rules provided them by the Missouri Supreme Court, it is not for this court to construe the rule to give it any other effect. Point denied.

## II

Appellant contends in his second point that the circuit court erred in affirming the Police Board's determination finding appellant guilty of violations of Department Rules set forth in Charges I, II and IV, of the Department's complaint. Appellant contends that the Board's decision should be reversed because it is unsupported by substantial and competent evidence on the whole record in that the only evidence supporting the Board's finding was incompetent hearsay and appellant's evidence to the contrary was neither disputed nor impeached. We disagree.

The standard for judicial review of an action of an administrative body is set out in the Missouri Constitution, Art. V, § 18, and § 536.140, RSMo 1986. The reviewing court must determine whether the action of the Board is supported by substantial and competent evidence upon the whole record, whether the decision was arbitrary, capricious or unreasonable, and whether the Board abused its discretion. *Greene County v. Hermel, Inc.,* 511 S.W.2d 762, 768 (Mo.1974). Evidence must be considered in a light most favorable to the administrative body, together with all reasonable inferences therefrom, and if evidence would support either of two opposed

findings, the reviewing court is bound by the administrative determination. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978); *Board of Education, Mt. Vernon Schools v. Shank,* 542 S.W.2d 779, 782 (Mo. banc 1976).

Appellant contends the Board's finding was not based on substantial and competent evidence in two respects. First, appellant contends that the evidence presented against him was hearsay and, thus, does not constitute competent and substantial evidence for the purpose of administrative review. We disagree.

The evidence at issue concerned Officer Ambrose's testimony regarding appellant's appearance, behavior and conversations with Officer Ambrose as they related to Lieutenant Pierce. At trial, Officer Ambrose testified from the police report he had prepared concerning appellant's arrest. Appellant contends that no sufficient foundation was laid for admission of the recorded evidence as "past recollection recorded," and therefore, Officer Ambrose's testimony constituted inadmissible hearsay.

We do not disagree with appellant's basic contention that otherwise inadmissible hearsay will not qualify as competent and substantial evidence upon the whole record to support a finding of fact by an administrative agency. *Wilson v. Labor and Industrial Relations Commission,* 573 S.W.2d 118, 121 (Mo.App.1978). A review of the record indicates that sufficient foundation was laid for admission of the evidence as "past recollection recorded." Further, prior to appellant's objections, Officer Ambrose testified unequivocally and from independent recollection that upon informing appellant of his rights, appellant replied directing obscenities to the arresting officers. Accordingly, we hold that Officer Ambrose's testimony could be properly considered and find substantial evidence in the record to support the Board's determination that appellant acted towards another member of the police department in a discourteous manner in violation of Police Manual Rule 7.011.

Second, appellant contends that the Board had insufficient evidence before it to

support his suspension in light of the Board's standard of review. Appellant principally attacks the Board's determination in that the record contains evidence in conflict with the Board's finding.

It is not grounds for reversal on appeal that an administrative record contains evidence in conflict with the findings of the Board. *Edmonds v. McNeal*, 596 S.W.2d 403, 407 (Mo. banc 1980). If there is substantial and competent evidence to support the findings of the Board and the findings are not contrary to the overwhelming weight of the evidence, even though the evidence would warrant either of two findings the reviewing court is bound by the decision of the administrative tribunal. *Id.* at 407–08. Moreover, we are required to examine the record in a light most favorable to the findings of the Board. *Hanebrink v. Parker*, 506 S.W.2d 455, 457 (Mo. App.1974).

The determination of the credibility of witnesses is the function of the administrative tribunal. *Shank, supra*, at 782. Although there is evidence in this case to support a decision contrary to that reached by the Board, its decision cannot be reversed simply because the evidence contrary to the Board's decision may also be substantial and competent. *Prokopf v. Whaley*, 592 S.W.2d 819, 823 (Mo. banc 1980).

█ While appellant presented a different version of what occurred at the scene, this conflict in testimony does not impeach a contrary finding by the Board which was supported by substantial and competent evidence on the whole record. *Miller v. Whaley*, 581 S.W.2d 916, 918 (Mo.App.1979). Applying this standard, we conclude that the Board's findings were predicated upon substantial and competent evidence. Point denied.

## III

In his third point appellant contends the circuit court erred in failing to declare Rule 7.011 of the Police Manual void because it violates appellant's due process rights in that it is so vague that it fails to provide appellant reasonable notice of the proscribed conduct and thus promotes arbitrary and discriminatory enforcement. We disagree.

Appellant was charged with four violations of the Police Standards of Conduct under Police Manual Rule 7.011.[4] Specifically, the charges related to violations of the rule wherein appellant acted "contrary to good conduct" when he operated a motor vehicle under the influence of alcohol and that appellant failed to "maintain reasonable standards of courtesy in [his] relations with the public and with other members of the department" when he directed obscenities at Officer Ambrose regarding Lieutenant Pierce. (discussed supra).

Appellant contends that these standards, as used in the Police Manual, fail to alert appellant and all other police officers of precisely which acts or conduct are proscribed by the standards of conduct and give the Board free reign in determining violations of the standards. We disagree.

---

4. Rule 7, § 7.011, provides in pertinent part:
Standards of Conduct—A member of the Department shall be subject to disciplinary action for violation of the rules of conduct set forth by the Department as herein, for the violation of other rules and regulations set out in the Manual, for the violation of Special Orders, and for the violation of the Orders of a superior officer.
Every member of the Department shall, at all times, maintain reasonable standards of courtesy in their relations with the public and with other members of the Department and shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in particular.
"Acts contrary to good conduct shall include, but not be limited to, the following:

(a) Conviction of a felony, misdemeanor or ordinance violation under any statute or ordinance.

. . . . .

(c) Any conduct unbecoming to a member which is contrary to good order and discipline of the Department.

. . . . .

(d) Any conduct detrimental to the public peace or welfare.
(e) The drinking of alcoholic beverages of any kind, while on duty, or while in any part of the uniform which would readily identify the individual as a member of the Metropolitan Police Department.

. . . . . "

The Police Manual Rules clearly set out those acts which fall within the parameters of proscribed conduct and therefore constitute punishable violations. The rule in question is contained in the official Police Manual. Appellant is required to be familiar with the manual as a condition of his employment. Further, as the Supreme Court of Missouri stated in *Milani v. Miller*, 515 S.W.2d 412, 418–19 (Mo.1974): "We may legitimately assume that by custom, usage and 'experience,' a reasonable degree of 'specificity' has been afforded in the application of the regulations involved here, and that the members of the Department are familiar with their responsibilities and duties."

Appellant has been a member of the Metropolitan Police Department for nineteen years. It is reasonable for this court to infer that during those nineteen years he had occasion to read, use and familiarize himself with the Rules contained in the Manual. As this court stated in *Plodzien v. Whaley*, 610 S.W.2d 63, 67 (Mo.App. 1980), it is impossible for the Police Manual to precisely prescribe every affirmative duty and proscribe every act of misconduct for the myriad of factual situations that are presented to the police officer. The language employed in the Manual is neither so vague nor imprecise so as to warrant the circuit court in error for declining to render Rule 7.011 void.

Appellant was given adequate notice and a hearing at which he was permitted to offer evidence in his defense. The procedural protections required by law for persons suspended or dismissed for violations of Police Manual Rules are not as strict as those required for persons charged with crimes. "It is sufficient if one is 'fairly apprised' of what acts will constitute a violation of the Rules, and of what offense he has committed." *Milani, supra*, at 416.

The rule in question proscribes actions contrary to good conduct and failure to maintain reasonable courtesy in relations with the public and other members of the Department. The conduct found in violation of the rule was violating a traffic ordinance and directing obscenities toward another member of the Department. Insofar as appellant is concerned, the rule is not unconstitutionally vague and was not unconstitutionally applied. Point denied.

## IV

Finally, appellant seeks an award of reasonable attorneys' fees. Appellant relies on the decision of *Wolf v. Missouri State Training School for Boys*, 517 S.W.2d 138, 146 (Mo. banc 1974), and contends that because assistance of counsel was necessary to protect his rights, he should be reimbursed for attorneys' fees incurred by him in bringing the administrative appeal.

Appellant's reliance on *Wolf* is misplaced. In *Wolf*, the Missouri Supreme Court held that an *improperly dismissed* public employee is entitled to a credit for reasonable attorneys' fees, necessary in vindicating his right to reinstatement, in determining the amount by which the lost salary should be mitigated. *Wolf, supra*, at 147–48; *see also, Edmonds v. McNeal*, 596 S.W.2d 403, 408 (Mo. banc 1980). As we affirm appellant's suspension, we find appellant is not entitled to an award of attorneys' fees. Point denied.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.